### NON TAYLOR v. THE STATE.

No. 1589.   Decided March 6, 1912.

**1.—Exposing Person—Public Place—Indictment.**

Where, upon trial of wilfully exposing the person in a public place, the indictment followed the statute, the same was sufficient.

**2.—Same—Insufficiency of the Evidence.**

Where, upon trial of wilfully exposing one's person in a public place, there was no evidence that the alleged livery stable was a public place under the statute, or that people were assembled or commonly resorted there for purposes of business, etc., and that defendant was simply bathing himself and did not expose his person outside of said stable, the conviction could not be sustained.

**3.—Same—Charge of Court.**

Where, in a misdemeanor trial, defendant's requested charges were applicable to the facts, they should have been submitted.

**4.—Same—Livery Stable—Public Peace.**

A livery stable is not per se a public place, but the facts must show that it was used as such. Metzer v. State, 31 Texas Crim. Rep., 11.

**5.—Same—Case Stated.**

Where, upon trial of wilfully exposing one's person, the evidence showed that what defendant did was brought about by the frolicsome acts of persons who went to the alleged livery stable to turn the water hose on the defendant, who was asleep, who thereupon disrobed himself and took a bath in said stable, and attempted to retaliate on his friends, there was no violation of law.

Appeal from the County Court of Montague.   Tried below before the Hon. A. W. Ritchie.

Appeal from a conviction of wilfully exposing one's person in a public place; penalty, a fine of $10.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.—Citing Waddell v. State, 37 Texas, 354; Lyles v. State, 21 Texas Crim. App., 153.

PRENDERGAST, JUDGE.—On July 18, 1911, the grand jury of

Montague County, indicted the appellant charging that on June 20, 1911, he "did then and there go into and near a public place, to wit, the livery stable of Armstrong and Taylor in the town of Sunset, Montague County, Texas, the same then and there being a place where people commonly resorted for purposes of business, and other lawful purposes, and did then and there unlawfully and wilfully expose his person indecently in a manner calculated to disturb the inhabitants of said public place." He was found guilty and fined $10.

The statute under which this prosecution was had is as follows: "If any person shall go into or near any public place . . . and expose his person in a manner calculated to disturb the inhabitants of such public place, . . . he shall be fined in any sum not exceeding one hundred dollars." Penal Code, article 470 (new), 334 (old). A public place within the meaning of said article is defined to be: Article 472 (new). "Any public road, street or alley of a town or city, or any inn, tavern, store, grocery or workshop, or place at which people are assembled, or to which people commonly resort for purposes of business . . . or other lawful purpose."

The appellant in the court below saved some bills of exception to the action of the court in refusing to allow him to ask certain questions in cross-examination of a certain witness and the remarks of the judge in ruling thereon. It is unnecessary, however, for us to discuss that matter here.

He also asked several special charges, claiming to present his defense in an affirmative way to the jury which were refused to which he took his several bills and also made the refusal grounds of his motion for new trial, stating therein how and in what way the special charge was called for by the evidence in the case. He also urges, in his motion for new trial, that the evidence is insufficient to sustain the verdict and the verdict was unwarranted thereby.

He also claims, in his motion for new trial, that the indictment was defective in that it charged that the alleged disturbance of the peace was in and near the livery stable of Armstrong and Taylor and the acts done by appellant were calculated to disturb the inhabitants of said livery stable and gives no other description of the place alleged to have been disturbed, and is defective and deficient because it fails to show whether Armstrong and Taylor was a firm or corporation, and to show the Christian names of either of them. In our opinion the court correctly overruled the motion to quash the indictment.

The appellant has not briefed or orally argued the case, but the State, through its Assistant Attorney-General, has filed a vigorous brief herein for the appellant, not for the State, contending that the evidence is wholly insufficient to sustain the verdict, stating, among other things, "it would be an outrage to convict one on such evidence." He also contends that the court erred in refusing to give the special charges 1, 2 and 6 asked by appellant.

The State introduced only one witness, Virgil Wilson, who, in

substance, testified that on June 20, 1911, Will Davis came by where he was on the streets in Sunset, Texas, and told him that appellant was down at the stable of Taylor and Armstrong asleep and proposed going down there and turning the hose onto him and wetting him. "When we got there Will Davis went around on the outside and turned the water on him, after he had fixed the hose on the inside so that the water would fall on Taylor. Taylor waked up when the water began falling on him and after he had waked he said, that as he was already wet he would just take a bath. He went to the back of the stable, pulled off his clothes and began taking a bath and asked Will Davis to wash off his back. Will began washing off his back and turned the water so that it went in his eyes and ears. The defendant began putting on his shirt and got it on and Will Davis turned the water on again and the defendant pulled his shirt off and got after Will Davis with the hose and tried to throw water on Will, but Will ran up the hallway, with the defendant after him. Will ran out the front door and the defendant ran after him and ran as far on the outside of the door as six or seven feet. The defendant was nude when he ran out the door this six or seven feet. I was standing by the door. I saw his private parts." On cross-examination this witness testified that he, Rex West, Will Davis and the defendant were the only ones present that he remembered. He did not remember whether he was standing on the outside or inside of the barn. When Davis began turning the water on appellant the last time he did not know whether appellant had a shirt on all the way or not. When appellant was after Davis he was after him with the end of the hose in his hand trying to shoot water on him. "People frequently take baths at the place where the defendant was bathing, as there is a platform there and plenty of water and a hose. The front doors to the livery barn are about six feet high and were closed on this occasion until Will Davis ran out ahead of Taylor and Will opened one of them." This was all the testimony by the State.

. Appellant introduced, among others, Rex West, who testified that he was down at Taylor and Armstrong's livery stable on the occasion when defendant was charged with exposing his person. "I went down there with Will Davis, who came by where I was and told me that Non Taylor was down at the barn asleep, and said let's go down and have some fun and turn the hose on him. We went down and Will fixed the hose so it would run on him and then went and turned on the water. When the defendant's clothes were wet he said he would just go on and take a bath, and he went back to a platform in the back of the barn and was taking the bath and asked Will Davis to wash off his back, which Will did, and while he was washing his back he turned the water so that it would run in the defendant's ears and eyes and defendant got the hose away from him and tried to turn it on Will Davis and Will ran out to the front door. The last I saw of defendant he was running after Davis with the

hose in his hand. I ran around behind some buggies, as I thought defendant was going to throw the water on me. When I next saw him he was coming back from toward the front end of the barn, with the end of the hose in his hand just as he had it when I saw him running after Davis. Defendant was in the barn all the time I saw him and the doors in front were closed, and when closed were about six feet high. Many people take baths at this livery barn, as it is about the only place around there to take baths. I did not see Virgil Wilson there. We went there to have some fun out of defendant by turning the water on him, which we did."

Appellant next introduced Virgil Tate, who testified: "I was up at the mill, which is about 100 yards from the livery barn, on the occasion when the defendant was charged with having exposed his person. I was where I could see the front end of the barn and I heard some hollering and laughing down at the barn. I saw Will Davis as he ran to the front end of the barn and ran just outside the door and stopped. I don't think he ever got further than just outside the door; in fact, think he held to the door all the time. I did not see the defendant come out after him. I did not see Virgil Wilson about there."

The appellant himself testified: "On the occasion in which I am charged with disturbance, I was down at the livery barn and was asleep, as I had been out on a drive the night before. I was waked by water falling on me. I got up and realized that I was wet and my clothes were wet, so I decided that as I was already wet I would take a bath, so I went back to the back end of the barn, where there is a platform, which was used to stand on while bathing, and took the bath and asked Will Davis to turn the water on my back, which he did, and soon he turned it into my ears and eyes, and I got the hose away from him and tried to put water on him, as he had on his Sunday clothes, but he ran toward the front door and I ran after him with the hose in my hand, but could not reach him, as the hose lacked about ten feet of being long enough for me to go to the front door. I know I did not get out the front door or even to it, for the hose would not permit, and that was all I was running him for. I have since measured the hose and the distance I lacked of getting to the door at the front, and found that the hose was not long enough by about ten feet from where it was attached to the hydrant to permit me to reach the door, and I know I did not turn loose the hose. I was undressed at this time. I did not see Virgil Wilson there. Many people bathe there where I was bathing. The doors at the front were high enough that I would have to tip-toe to see out over them when I was on the inside. The platform where I was bathing could not be seen from the front end of the barn, as it was around behind a partition. I know that no one saw me at the barn except Will Davis and Rex West, and I am sure no one saw me on the out-

side, as I did not go on the outside." This was all the testimony in the case.

We do not always agree with the contention of the State's attorney in behalf of an appellant, that the evidence is insufficient to sustain the verdict, but in this case we do. We believe that what the appellant did on this occasion was brought about by the frolicsome acts of persons who were evidently his friends, and who went to the livery stable solely for that purpose, and who were having fun at his expense, and were not such acts as show any violation of the statute under which he was prosecuted. There was no evidence that this livery stable was a public place such as contemplated by this statute, nor that people were assembled there, nor that people commonly resort there for purposes of business, except perhaps for bathing, which appellant was doing.

The said special charge No. 1, requested by appellant, is to this effect: "That the defendant had the legal right to take a bath in the livery stable in question and in so doing he would violate no law." Said second charge was: "Defendant would not be guilty if he did not expose his person outside of the livery stable." Said special charge No. 3 was that "under the indictment the defendant would not be guilty, unless you believe that in taking the bath in question he acted in such a way as was calculated to disturb the people who had business at said place or had the right to be at such place by reason of being employed at said place." And the sixth was that "unless you find that the livery stable in question was a public place you will find the defendant not guilty."

The third special charge should have been given—the first and others should not, in the terms asked. The sixth, if modified so as to include the exposure of his person, if so, just outside of the stable, if that was a public place, should be given.

It has been held by this court that a livery stable is not per se a public place. (Metzer v. State, 31 Texas Crim. Rep., 11), nor is a gin (Dailey v. State, 27 Texas Crim. App., 569), not being specially named in the statute.

There was no evidence showing or tending to show that there was any others present, either in the stable or out of it, anywhere near, other than the persons who went there for the purpose of throwing water on the appellant in fun while he was asleep and afterwards, and their frolic thereafter caused him, in the most natural way, even though undressed, to protect himself and retaliate on his friends who were having fun at his expense. They did not resort there for purposes of business, or other lawful purpose, nor did they constitute such an assembly as is contemplated by this law.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*