STATE v. NELSON D. PEERY.[1]

July 18, 1947.

Nos. 34,360, 34,380.

[1]Reported in 28 N. W. (2d) 851.

 

*Francis M. Smith, Warren E. Burger, Irving Clark, Samuel Lip-schultz, Archie Gingold, Margaret H. Kane, Daniel Dennis O'Con-nell, Douglas Hall,* and *Kenneth J. Enkel,* for appellant.

*Bruce J. Broady, James F. Sullivan, Frank B. Daugherty,* and *John J. McNeil,* for the State.

THOMAS GALLAGHER, JUSTICE.

Two appeals involving a conviction for indecent exposure, one from an order of the municipal court of St. Paul vacating its prior order granting defendant a new trial, and the other from a subsequent order denying defendant's motion for a new trial on the ground of newly discovered evidence.

August 13, 1946, defendant, then a student at Concordia College in St. Paul, was arrested without warrant and held without bail until August 16, 1946, when he was brought to trial in the municipal court of St. Paul on a "tab charge" of "Indecent Exposure." On the criminal register of that date the proceeding was entitled "State vs. Nelson D. Peery." Otherwise there is no indication whether defendant was tried for violating municipal ordinance paragraph 452, 1941 Compiled Ordinances of the City of St. Paul, or M. S. A. § 617.23, both of which relate to indecent exposure. The register further indicates that upon arraignment on that date defendant entered a plea of "not guilty," and his trial proceeded forthwith; that some six witnesses were then called for the state, while defendant and one other witness testified on defendant's behalf; and that the court thereupon found defendant guilty and ordered him imprisoned in the workhouse of the city of St. Paul for a term of 90 days.

Subsequently, on August 30, 1946, the trial court, in response to defendant's motion, vacated its prior judgment of conviction and granted defendant a new trial. No memorandum accompanied this

order. Thereafter, on September 10, 1946, a written complaint was filed by the prosecution, signed by a police officer of the city of St. Paul, and entitled, "City vs. Nelson D. Peery," charging the latter with committing misconduct on August 13, 1946, in exposing his person in the windows of the Men's Dormitory of Concordia College, where he then resided, in violation of ordinance No. 1856 (which is paragraph 440) of 1941 Compiled Ordinances of the City of St. Paul. The officer signing this complaint was not a witness to the acts complained of. Ordinance No. 1856 (paragraph 440) relates to the maintenance of houses of ill fame and acts committed therein. Obviously, it has no application here, and the state makes no claim that defendant's conviction was one for its violation. No proceedings were ever had under that complaint.

On September 21, 1946, the trial court, upon the state's motion, vacated its prior order of August 30, 1946, wherein it had vacated its judgment of conviction and ordered a new trial, and ordered defendant committed to the workhouse forthwith. On October 10, 1946, the court denied defendant's motion for a new trial on the ground of newly discovered evidence. Defendant has appealed from both orders, having been released on bail pending the outcome of the appeals. The newly discovered evidence, in substance, was to the effect that one of the state's witnesses had previously pleaded guilty to the offense of defrauding the Ramsey County Welfare Board.

The evidence presented at the trial indicates that defendant, 23 years of age, a veteran of four major campaigns of the United States army in the South Pacific and at the time in question a seminar student at Concordia College awaiting the opening of the fall term at the University of Minnesota, occupied a corner ground-floor room in the Men's Dormitory at Concordia. The room has two windows, one opening to the west and the other to the north. About 15 to 20 feet from the west window, a cement sidewalk passes through the college grounds. It is used by the public generally and particularly by employes going to and coming from their work at the Brown & Bigelow plant nearby.

The state's witnesses here, several young ladies employed by Brown & Bigelow, testified in substance that on several occasions in passing by the Men's Dormitory on their way from work about 5 p. m. they had observed defendant unclothed, standing in front of or near the north window of his room, and that he later walked across and stood in the same condition near the west window; that on one such occasion they had observed him raise the west window shade and stand near this window exposed to view, entirely unclothed. There is no evidence that defendant had signaled or called to these witnesses or otherwise endeavored to direct their attention to himself.

In his defense, defendant testified that he returned to his room in the dormitory about 5 p. m. each evening; that it was his custom then to change his work clothing, take a shower in the basement of the dormitory, return to his room, and dress for his evening meal and classes. He denied that he had intentionally exposed himself. He admitted that on some occasions he may have neglected to draw the shades, but testified that he was not conscious of passers-by on the days in question; that he was careful as to his conduct at all times because of his high regard for his classmates who occupied neighboring dormitories. He stated that on at least one of the dates testified to by the state's witnesses he had not worked or changed his clothing at the time such witnesses had testified that they had passed his quarters and observed him.

Dr. Hugo W. Thompson, professor of Religion and Philosophy at Macalester College in St. Paul, testified that he was in charge of the industrial seminar at Concordia College attended by defendant; that the classes therein were held at night; that the students, including defendant, taking such course had been carefully selected from other colleges and were required, as part of the seminar, to be employed during the daytime; that defendant had always conducted himself as a gentleman, and the records of the project so indicated; that he (Dr. Thompson) had often used the walk in front of the Men's Dormitory at about the same time of day the state's witnesses passed defendant's quarters; that on such occasions he had often

looked toward the Men's Dormitory, including defendant's room, but at no time had he witnessed any such incidents as testified to by the state's witnesses; that the walk is on college property and not a public street; that west of the walk is a thick hedge; that it is 40 feet from the west wall of the building to said walk; that defendant's room could be seen from his office across the way, but at no time had he seen any conduct on the part of defendant such as testified to by the state's witnesses. A portion of the settled case which the trial court certified as true and correct stated:

"There was no testimony by any of the witnesses either for the Prosecution or the Defense that defendant had waved or signaled to any of the girl witnesses for the Prosecution who claimed to have seen any of the exposures, or that he had in any way attempted to attract their attention or that he had called to or whistled at them or made any sound or done anything else calculated to attract their attention or the attention of anyone; other than the facts hereinbefore specifically recited.

"There was no testimony by any of the witnesses that defendant had committed any lewd or indecent acts other than the claimed exposures."

On appeal, defendant urges (1) that neither under § 617.23 nor the ordinance, paragraph 452, did the evidence establish that his exposure was wilful or intentionally lewd, and hence that such evidence is insufficient to sustain his conviction thereunder; (2) that because of the failure of the "tab charge" sufficiently to describe the ordinance or statute whereunder he was accused and because of the failure to permit adequate preparation for his defense he was denied the due process guaranteed by U. S. Const. Amend. XIV, and Minn. Const. art. 1, § 7; (3) that the trial court erred in vacating its order granting a new trial and vacating its prior conviction, after the state had waived its right to object thereto by subsequently filing the written complaint hereinbefore described; and (4) that the court erred in denying defendant's subsequent motions for trial by jury and a new trial because of newly discovered evidence.

■ The principle is well established that under either the ordinance or the statute,. before the offense of indecent exposure can be established, the evidence must be sufficient to sustain a finding that the misconduct complained of was committed with the deliberate intent of being indecent or lewd. Ordinary acts or conduct involving exposure of the person as the result of carelessness or thoughtlessness do not in themselves establish the offense of indecent exposure. This would seem to be particularly true where the acts complained of take place within the privacy of a lodging removed from public places and where observation thereof is to some extent an invasion of the rights of privacy ordinarily attached to a home, whether it be a dwelling house or a room in a college dormitory.

As stated in 33 Am. Jur., Lewdness, Indecency and Obscenity, § 7:

"A mere accidental exposure of the person will not amount to the crime of indecent exposure, but it must appear that the exposure was intentional, at such time and place and in such manner as to offend against public decency. The intent, however, may be inferred from the manner of the exposure or from recklessness."

This rule is expressed in State v. Martin, 125 Iowa 715, 718, 101 N. W. 637, 638, as follows:

"* * * It does not follow * * * that one who uncovers his person in the privacy of his own apartment, or other place where there is no reason to suppose that his act may offend the sensibilities of others, is guilty of a crime. The words 'indecent exposure' clearly imply that the act is either in the actual presence and sight of others, or is in such a place or under such circumstances that the exhibition is liable to be seen by others, and is presumably made for that purpose, or with reckless and criminal disregard of the decencies of life. * * * The exposure becomes 'indecent' only when he indulges in such practices at a time and place where, as a reasonable person, he knows, or ought to know, his act is open to the observation of others."

See, also, Rachel v. State, 71 Okl. Cr. 33, 107 P. (2d) 813; Taylor v. State, 65 Tex. Cr. 469, 145 S. W. 599; Morris v. State, 109 Ga. 351,

34 S. E. 577; Wainscott v. State, 89 Ind. App. 452, 166 N. E. 666; and McKinley v. State, 33 Okl. Cr. 434, 244 P. 208.

■ To establish intent where the act does not occur in a public place or otherwise where it is certain to be observed, some evidence further than the act itself must be presented. Ordinarily, intent is established by evidence of motions, signals, sounds, or other actions by the accused designed to attract attention to his exposed condition, or by his display in a place so public and open that it must be reasonably presumed that it was intended to be witnessed. This rule is well expressed in Miller v. People (1849) 5 Barb. (N. Y.) 203, 204:

"* * * But two or three persons were so unfortunate as to have observed the conduct complained of [in the rear of the defendants' home, surrounded by a five-foot fence]; and there was no satisfactory evidence to show that the defendants supposed they were seen by any body, or that they intended to expose their persons to the public view. * * *

"The recorder charged the jury * * * that the evidence was positive as to the offence charged having been committed; * * * that as to the intent, the acts showed the intent; and if they were proved that was all that was necessary. * * *

"It is a general principle of evidence that a man shall be taken to intend that which he does, or which is the immediate and natural consequence of his act. But where an act in itself indifferent becomes criminal if it be done with a particular intent, then the intent must be alleged and proved. The intent in the present case was a material ingredient in the offence, and was a question of fact * * * for the * * * jury."

In People v. Ulman, 258 App. Div. 262, 263, 16 N. Y. S. (2d) 222, 223, the New York court upheld the principle expressed in the Miller case. Therein it stated:

"In our opinion the circumstances surrounding the commission of the alleged offense, as gathered from the testimony, raise a serious question as to whether the act, if committed, was willful and lewd

or whether it was merely the result of heedlessness without any intent to commit a criminal offense.

"Defendant, testifying as a witness in his own behalf, denied the commission of any intentional wrongdoing. The record shows that he is a young man of previous unblemished character, well educated, of a good home, and since his graduation from college has been steadily employed with reputable business concerns. Several character witnesses testified to his good reputation for morals and honesty.

"In order to constitute the crime the exposure of one's person in any public place must be intentional, willful and lewd. * * * The intent with which the act is committed forms a material ingredient of the offense. If it appears that the exposure was not the wanton and lewd conduct which the statute condemns but was unintentional, the crime has not been committed. * * * Here the testimony indicates that if there was any apparent misconduct it was due to accident and not to design. Moreover, it is the law that evidence of good character may of itself create a reasonable doubt when without it none would exist. * * * In this case defendant's character evidence considered with all the other proof, we think, was sufficient to create a reasonable doubt of defendant's guilt of the crime charged."

In the instant case, we are far from satisfied that the evidence is sufficient to sustain the trial court's finding that defendant's conduct was wilful and lewd rather than the result of carelessness or thoughtlessness. Defendant has denied the intent. He is a man without a previous blemish against his record. He is a combat veteran of four major campaigns of the South Pacific, honorably discharged as a staff sergeant, seeking a college education, and working part time to help defray his expenses. He concedes that on occasions he may have been careless. His room is small and fairly close to the sidewalk. His ordinary activity therein at about the times in question, when it was his custom to remove his clothing preparatory to bathing, might easily be misinterpreted by passers-by looking into his room.

There is no evidence whatsoever that he endeavored to attract the attention of passers-by by motioning, signaling, or calling to them, unless his act of raising the shade on one occasion might be thus regarded. This would seem rather flimsy evidence upon which to convict a man of the charge specified and to forever blemish his name and character as a result.

The testimony of Dr. Hugo Thompson, professor of Religion and Philosophy at Macalester College, characterizes defendant as a man of good reputation and high standing in the seminar. All the testimony in the case is consistent with defendant's testimony that he may have been careless or heedless, but that he did not intentionally expose himself. In our opinion, the evidence as submitted is insufficient to sustain a finding that defendant wilfully and intentionally indecently exposed himself in violation of either the ordinance or the statute above designated.

Reversed with directions to enter judgment discharging defendant.

PETERSON, JUSTICE (dissenting).

Because I think that the evidence was sufficient to justify a finding of intentional indecent exposure, I dissent.

There is no dispute concerning certain facts such as those that defendant was nude in the room in question under such circumstances as to be visible through the windows to casual passers-by on the sidewalk outside; that the room is on the first floor at the northwest corner of the building; that there is a window on the north side opening onto the street lying to the north; that there is a window on the west side opening onto the sidewalk; that the bottom sills of the windows are only knee-high from the floor; that if a man stood nude in front of a window his private parts would be exposed to public view; and that girls employed in the vicinity passed on the sidewalk outside the window in going to and from their work.

The offense is alleged to have been committed on August 13. Five girls, who were in no way discredited or impeached, testified that on three separate occasions defendant stood nude in front of the window so as to be plainly visible to them. The exposure on the 13th

was the third such exhibition. On August 8 defendant looked out the north window as two of the girls approached, and then as they were passing on the west side on the sidewalk he raised the window shade and stood nude in the open window. On August 12 he stood nude in the west window.

Defendant told an unsatisfactory and contradictory story. His defense was not an unequivocal denial of the version given by the girls, but an argumentative one, which he attempted to buttress by an explanation that did not hold water. He did not unequivocally deny that he stood naked in the west window. He said that he "could" not have done so, because he had a standing to maintain with his "classmates," and because, if he were nude in the room, they "could certainly observe" him, and thereby his standing would be destroyed. There was no denial of what occurred on the 8th, as testified to by the girls, to the effect that after defendant looked out the north window he stepped to the west window and raised the shade. He denied any intention to expose his person to anyone, but stated that "he might have overlooked drawing the shades of the two windows north and west in his room," and denied knowledge of the fact that the girls passed his windows on the dates mentioned. In effect, he admitted on cross-examination that persons in the other buildings could see into his room and stated that because of that fact he had been careful. On direct examination he testified that he was nude each day at the time the girls passed, because he then undressed to change clothes for the purpose of going to another room to take a shower bath after his day's work. On cross-examination he stated that he did not work on August 12 and did not take a shower bath that evening, "as he was not dirty." Thereby, his explanation that he went nude in his room as an incident to his bathing was contradicted—he was nude on an occasion when he did no bathing.

The trial judge certified (1) that the evidence showed the foregoing facts; (2) that there was no testimony that defendant had waved, signaled, called, or done anything to attract attention *"other than the facts hereinbefore specifically recited"* (italics supplied);

and (3) that there was no testimony that defendant had committed any lewd or indecent acts *"other* than the claimed exposures" (italics supplied). It is obvious, therefore, that the judge simply meant to certify that defendant had committed the lewd and indecent acts which have been stated, and no others. The question for decision emerging here from those facts is whether they constitute a basis for finding the commission of intentional indecent exposure.

1. The applicable rule of law is correctly stated in the majority opinion, but it is misapplied. The rule is of course that indecent exposure consists of an intentional, not accidental, exposure of the person at a time and place and in such manner as to offend against public decency, and that the intent may be inferred from the manner of the exposure or recklessness. Exposure of one's private parts in a place where it is likely to be seen by a number of casual observers, as, for example, in a store to which the public is invited for purposes of trading and the interior of which may be readily seen by people passing on the street, constitutes indecent exposure; and where the evidence shows only such facts it supports a finding that the exposure was intentional. Van Houten v. State, 46 N. J. L. 16, 50 Am. R. 397; Annotation, 93 A. L. R. 1000; 33 Am. Jur., Lewdness, Indecency and Obscenity, § 7. The exposure here is not different from that in the Van Houten case, and the same rules of law should be applied here as there. In Commonwealth v. Bishop, 296 Mass. 459, 6 N. E. (2d) 369, defendant's conviction was sustained where it appeared that he exposed his nude person in his room under such circumstances that he could be seen by people living in a house to the rear of the one in which he lived. Pertinent cases are discussed in Commonwealth v. Broadland, 315 Mass. 20, 51 N. E. (2d) 961, and Annotation, 93 A. L. R. 996.[2]

The early law was not very tender of a defendant who indecently exposed himself to a female and declared that in such cases the

---

[2]Truett v. State, 3 Ala. App. 114, 57 So. 512; People v. DeVine, 271 Mich. 635, 261 N. W. 101; People v. Kratz, 230 Mich. 334, 203 N. W. 114; State v. Goldstein, 72 N. J. L. 336, 62 A. 1006; Moffit v. State, 43 Tex. 346; Reg. v. Wellard [1884] 14 Q. B. 63; Reg. v. Thallman [1863] 9 Cox C. C. 388.

offender may be treated as a "rogue and vagabond." 2 Chitty's Black-stone, Book IV, p. 64, note 25.

Here, in addition to the inferences to be drawn from the established facts that the exposure occurred where it was likely to be seen by persons passing on the outside and that defendant himself admitted this to be the fact, the evidence that defendant committed the same offense on prior occasions and that on one of them—August 8—he attracted the attention of two of the girls by raising the shade in front of the west window as they passed it after he had observed through the north window that the girls were approaching from that direction and would pass the west window shows not only that that particular exposure was an intentional and calculated one, but that all the exposures were intentional and not accidental. Perkins v. Jeffery [1915] 2 K. B. 702. There, the court applied the rule in cases of this kind, which we have reiterated in the numerous cases collected in 2 Dunnell, Dig. & Supp. § 2459, that the commission of the same offense on prior occasions negatives that the particular offense charged was unintentional or accidental.

The cases cited by the majority are plainly distinguishable. To begin with, none of them involves a situation where the defendant stood nude in front of a window the sill of which was only knee-high and where his nudity could be plainly seen by persons outside. Furthermore, in none of them did it appear, as it does here, that the defendant had previously intentionally committed the same offense. With some exceptions, to which I shall specifically refer, they involve entirely different situations, such as an exposure in the presence of only one person, and the question was whether such an exposure constituted a "notorious" public exposure; exposures intended not to be seen at all, such as one seen only by window peeping and one seen through a side window through which persons ordinarily had no view; exposure in a place not a public one, such as unintentional exposure incident to taking a bath in a livery stable; and purely accidental exposures. The rules laid down in some of them would compel affirmance here.

The case of Morris v. State, 109 Ga. 351, 34 S. E. 577, turned on whether commission of the offense before one person constituted "notorious" public indecent exposure, and the court held that it did not. Here, the offense was committed before several persons. It is submitted that the rule laid down in the Morris case is unsound. See, State v. Berg, 171 Minn. 513, 213 N. W. 46; Commonwealth v. Bishop, 296 Mass. 459, 6 N. E. (2d) 369; Annotation, 93 A. L. R. 1007.

Rachel v. State, 71 Okl. Cr. 33, 107 P. (2d) 813, involved a situation where exposure incident to fornication committed in a room with the shades drawn was observed by window peeping by persons whose presence was unknown to those engaged in the indecent exposure. Obviously, there was no intentional exposure there.

In McKinley v. State, 33 Okl. Cr. 434, 244 P. 208, there was no evidence to show that defendant knew or had reason to know that his standing nude in a bathroom while shaving could be observed by persons outside. Here, according to defendant's own testimony, he knew that his being nude in his room "could certainly" be seen by others.

In Wainscott v. State, 89 Ind. App. 452, 166 N. E. 666, the observation was made by going round to a side of the house to look through a window not open to public view.

Taylor v. State, 65 Tex. Cr. 469, 145 S. W. 599, simply involved the question whether the livery stable in which defendant took a bath was a *public place.*

Miller v. People, 5 Barb. (N. Y.) 203, holds that intent may not be inferred from the act of exposure itself, even though the exposure might be observed by others. This case is contrary to the weight of authority and has been criticized as unsound. 2 Wharton, Criminal Law (12 ed.) § 1750, note 9. Plain common sense should deter us from following it.

In People v. Ulman, 258 App. Div. 262, 16 N. Y. S. (2d) 222, the facts are not stated. The rules there announced would support a conviction here.

State v. Martin, 125 Iowa 715, 718, 101 N. W. 637, 638, fully supports the conviction here. There, the exposure was committed in the presence of one female. The quotation from this case in the majority opinion shows that under well-settled rules defendant's conviction here should be sustained, because defendant's exposure occurred at a time and place and under such circumstances that he, as a reasonable person, should have known that his act would be observed by others. As the court there said:

"* * * The exposure becomes 'indecent' * * * when he indulges in such practices at a time and place where, as a reasonable person, he knows, or ought to know, his act is open to the observation of others." (Italics supplied.)

2. Evidence of defendant's good character was a fact to be considered by the trial judge in determining whether he was guilty or innocent. Good character is not a defense as a matter of law. State v. Sweeney, 180 Minn. 450, 231 N. W. 225, 73 A. L. R. 380; State v. Tuomi, 167 Minn. 74, 208 N. W. 528; State v. Dolliver, 154 Minn. 297, 191 N. W. 594; Id. 150 Minn. 155, 184 N. W. 848; Hermansky v. United States (8 Cir.) 7 F. (2d) 458; 2 Dunnell, Dig. & Supp. § 2458; Annotation, 10 A. L. R. 10; 22 C. J. S., Criminal Law, §§ 53, 678, 679; 15 Am. Jur., Criminal Law, § 313.

The rule is so stated in People v. Ulman, 258 App. Div. 262, 16 N. Y. S. (2d) 222, supra, an indecent exposure case; but, because the facts there were not stated the case is of no particular value as showing the application of the rule in a particular fact situation.

In State v. Sauer, 38 Minn. 438, 440, 38 N. W. 355, 356, Mr. Justice Mitchell explains the importance of good character of the defendant in a criminal case and explains its role in a case as follows:

"* * * Evidence of good character is admissible to support the original presumption of innocence, and is to go to the jury, and be considered by them, in connection with all the other evidence in the case. If they are satisfied of his guilt beyond a reasonable doubt, they must find him guilty, notwithstanding his previous good character; on the other hand, if, after considering all the evidence, (that

of good character included,) they have a reasonable doubt, they must acquit. Good character is a fact varying greatly in its value, according to the proofs to which it is opposed. Cases may be made out so strong that no proof of character can make them doubtful; while in others the evidence against a person might be such that evidence of good character would produce a reasonable doubt of his guilt. Good character, when proved, is a fact in the case that may tend, in a greater or less degree, to establish innocence; and it is not to be put to one side by the jury in order first to ascertain whether the other evidence, considered by itself, does not establish guilt beyond a reasonable doubt."

Here, the evidence showing the commission of the offense was in no way met or overcome. Defendant's explanations did not fully explain his conduct. The case simply amounted to one where a man previously known as having good character was proved guilty of an intentional indecent act. Under such circumstances, evidence of good character loses the force it might have in a doubtful case.

The majority holding simply amounts to saying that it is lawful for a man to stand nude in front of a window knowing that passers-by will see him. I cannot subscribe to such a doctrine, because I think it is not the law.