**STATE of Minnesota, Appellant,**

v.

**Jessica Rae WHITE, Respondent.**

No. A04–1518.

Court of Appeals of Minnesota.

March 1, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Jay M. Heffern, Minneapolis City Attorney, Karen A. Swedenburg Her-

land, Assistant City Attorney, Minneapolis, MN, for appellant.

Barbara S. Isaacman, Assistant Public Defender, Minneapolis, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge; RANDALL, Judge; and SHUMAKER, Judge.

## OPINION

TOUSSAINT, Chief Judge.

This appeal is from a pretrial order dismissing a charge of gross-misdemeanor prostitution, committed in a public place, under Minn.Stat. § 609.324, subd. 2 (2002). We affirm.

## FACTS

The complaint alleges that on May 25, 2004, at about 1:00 a.m., undercover Officer Willis was driving an unmarked vehicle at 31st Street and 5th Avenue South in Minneapolis. Officer Willis saw respondent Jessica Rae White standing by the street and pulled his car over to the curb. White walked to the car and entered it "without invitation" from the officer. As Officer Willis drove, White first sought assurance that he was not a police officer and then asked Officer Willis what he wanted to do. After they negotiated an exchange of oral sex for $30, Officer Willis signaled other officers, who arrested White.

White moved to dismiss the complaint for lack of probable cause, arguing that the interior of Officer Willis's car was not a "public place" as required by the statute under which she was charged. The district court granted the motion to dismiss, and the state filed this appeal.

## ISSUE

Is the inside of a motor vehicle traveling on a public street a "public place" for purposes of the gross-misdemeanor prostitution statute?

## ANALYSIS

Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996). Respondent White, however, argues that because this is a pretrial appeal by the state, the district court must be affirmed unless the state shows its decision was clearly erroneous. *See State v. Trei,* 624 N.W.2d 595, 597 (Minn.App.2001), *review dismissed* (Minn. June 22, 2001). We conclude that under either standard of review the district court's order must be affirmed.

The statute White was charged with violating applies to anyone who "solicits or accepts a solicitation to engage for hire in sexual penetration or sexual contact while in a public place...." Minn.Stat. § 609.324, subd. 2 (2002). For purposes of the prostitution statutes, "public place" is defined as:

a *public street* or sidewalk, a pedestrian skyway system ..., a hotel, motel, or other place of public accommodation, or a place of public accommodation, or a place licensed to sell intoxicating liquor, wine, nonintoxicating malt beverages, or food.

Minn.Stat. § 609.321, subd. 12 (2002) (emphasis added).

The district court concluded that the statute is ambiguous, and that the intent behind the statute was "to protect citizens from being unwitting witnesses to the agreement that constitutes the criminal conduct." Therefore, it concluded, the term "public place" should be interpreted to refer to areas "where the public is likely to be present."

A statute is ambiguous if it is subject to more than one reasonable interpretation. *See State v. Collins,* 580 N.W.2d 36, 41 (Minn.App.1998), *review denied* (Minn. July 16, 1998). The prostitution statute defines "public place" only in terms of various examples, such as streets, sidewalks, skyways, hotels, motels, and restaurants. Minn.Stat. § 609.321, subd. 12. The definition includes other places of "public accommodation," *id.,* but that term does not necessarily incorporate into the statute all places that might be considered "public." *See generally* Minn.Stat. § 363A.03, subd. 34 (Supp.2003) (defining "place of public accommodation" for purposes of Minnesota Human Rights Act); *Wayne v. MasterShield, Inc.,* 597 N.W.2d 917, 922 (Minn.App.1999) (holding apartment complex was not "place of public accommodation" under Minnesota Human Rights Act), *review denied* (Minn. Oct. 21, 1999).

As to some of the locations listed in the statutory definition, such as a "pedestrian skyway system," a motel, or a licensed establishment, the statutory definition of "public place" may be unambiguous. But the primary use of a "public street" is as a place dedicated to the movement of vehicles in which the occupants have some expectation of privacy. *See generally State v. Wiegand,* 645 N.W.2d 125, 131 (Minn.2002) (holding that search, even of automobile, is substantial invasion of privacy). Thus, much of what occurs on a "public street" is not "public" in the usual sense of the word. We conclude that the district court properly determined that the definition of "public place," as extended to a "public street," is ambiguous.

█ The district court cited the rule of lenity applied when construing statutes that define criminal offenses. A penal statute must be strictly construed in favor of the defendant, although that does not require the court to adopt the narrowest possible interpretation. *State v. Zacher,* 504 N.W.2d 468, 473 (Minn.1993). The district court concluded that the statutory definition of "public place" could not be construed, consistent with the rule of lenity, as applying to the interior of a motor vehicle traveling on a public street. We agree.

The object of all statutory interpretation is to ascertain and effectuate legislative intent. Minn.Stat. § 645.16 (2002); *In re Welfare of C.R.M.,* 611 N.W.2d 802, 805 (Minn.2000). The district court concluded that the intent behind this gross-misdemeanor prostitution statute was to further discourage the solicitation and negotiation of prostitution in open view of the public. Although the statute does not include a statement of purpose or intent, this intent can be readily inferred from the definition of "public place," which explicitly includes hotels, motels, establishments licensed to sell alcohol or food, and other places of "public accommodation," where prostitution might be visibly solicited. Minn.Stat. § 609.321, subd. 12. And, as illustrated by the citizen complaints that prompted Officer Willis's undercover operation here, it is the publicly visible nature of much prostitution activity that prompts criminal enforcement.

The state cites *State v. Stevenson,* 656 N.W.2d 235 (Minn.2003), as it did in the district court, in support of its argument that White's conduct occurred in a "public place." In *Stevenson,* the defendant was convicted of indecent exposure and attempted fifth-degree criminal sexual conduct for masturbating while sitting in a motor vehicle parked facing a playground area. *Id.* at 237. The indecent exposure statute required that the act occur in "any public place." *Id.* at 240 (quoting Minn. Stat. § 617.23, subd. 1 (2000)). Referring to its decision in *State v. Peery,* 224 Minn.

346, 28 N.W.2d 851 (1947), the supreme court held that "[o]ur concept of public was not based on the privacy expectations of the defendant but on the likelihood that the conduct would be witnessed by others." *Id.* at 241, 28 N.W.2d 851. The *Stevenson* court, applying *Peery,* held that, given the location of the defendant's vehicle, which was parked next to a public sidewalk by a beach, it was so likely that the defendant's act would be observed by others that the defendant, it could be reasonably presumed, intended for it to be observed. *Id.*

As the district court noted, *Stevenson* did not involve a statutory definition of "public place." Because the statute also required proof of "deliberate intent of being indecent," the supreme court's analysis looked to the defendant's intent to be observed. But here, there is no need to look to White's intent to determine the scope of the term "public place." The issue is whether that part of the "public street" occupied by the vehicle inside which White was sitting was a "public place."

The state cites another case interpreting the term "public place," *State v. DeLegge,* 390 N.W.2d 10 (Minn.App.1986). In *DeLegge,* a weapons-possession case, this court noted that "public place" "is a relative term and what may be a public place for one purpose may not be a public place for another purpose." *Id.* at 11–12 (citation omitted). This court stated:

> Because indecent exposure laws are intended to protect innocent people from being exposed to offensive sexual behavior, "public place" in indecent exposure cases has been interpreted broadly to include areas that can easily be seen by pedestrians.

*Id.* at 12 (citation omitted). The court concluded that because the private driveway on which DeLegge's car was parked, with a loaded gun inside, was close to the road and other areas "where people regularly walk," it should be considered a "public place." *Id.*

Like *Stevenson, DeLegge* did not involve a statutory definition of "public place." And it involved a unique statutory purpose—reducing the risk to innocent passersby from the discharge of a weapon. *See id.* This statutory purpose is quite different from the purpose of the gross-misdemeanor prostitution statute, which is to reduce the amount of prostitution visible to the public. It is obvious that members of the public may be threatened by the discharge of a weapon that is not visible to them. Thus, we conclude that *DeLegge* does not compel the conclusion that the interior of a motor vehicle is a "public place" for purposes of the gross-misdemeanor prostitution statute.

The district court also rejected the state's argument that because the legislature in the vehicle-forfeiture and drivers-license statutes recognized that prostitution, or the solicitation of prostitutes, occurs in motor vehicles, the term "public place" should be read broadly to include the interior of automobiles. A motor vehicle is subject to forfeiture if used in the commission of a prostitution offense. Minn.Stat. § 609.5312, subd. 3(a) (2002). A person who uses a motor vehicle while patronizing a prostitute may also have the conviction noted on his driving record. Minn.Stat. § 609.324, subd. 5 (2002). But these provisions, while recognizing that motor vehicles are used, particularly by patrons of prostitutes, to commit the offense, do not necessarily indicate a legislative intent that solicitation of prostitution inside a motor vehicle should be punished more severely than solicitation in other locations. Had the legislature so intended, it could have defined as a gross-misdemeanor offense the solicitation of prostitution in a motor vehicle. Instead, the legis-

lature defined "public place" to include only the "public street," and left to inference or argument the extension of "public street" to the vehicles located on it. This court cannot supply that which the legislature overlooks or purposely omits. *See State v. Jones*, 587 N.W.2d 854, 856 (Minn. App.1999), *review denied* (Minn. Mar. 16, 1999).[1]

The district court construed "public place" in the gross-misdemeanor prostitution statute as not extending to the interior of a moving vehicle on a public street. That is the most reasonable construction of the term, as well as the one most in accord with the intent of the statute and the one that follows the rule of lenity. Thus, the district court did not clearly err in dismissing the complaint.

## DECISION

The district court properly construed the term "public place" as not including the interior of a motor vehicle traveling on a "public street," and therefore did not clearly err in dismissing the complaint.

**Affirmed.**

SHUMAKER, Judge (dissenting).

I respectfully dissent.

Under Minn.Stat. § 609.324, subd. 2 (2002), it is a gross misdemeanor to solicit, accept, hire, or engage in prostitution in a "public place." Minn.Stat. § 609.321, subd. 12 (2002), defines "public place" to mean a public street, a public sidewalk, a pedestrian skyway, a hotel, a motel, a bar, a restaurant, a public accommodation, or a place of public accommodation.

The undisputed facts show that a plain-clothes police officer driving an unmarked car picked up a prostitute, respondent White, in a public area and, as the two drove in the officer's car, White offered sexual services for money. Upon the officer's signal to other officers, White was arrested and charged with gross-misdemeanor prostitution.

Granting White's motion to dismiss the charge for lack of probable cause, the district court ruled that White's offer to engage in sex for money did not occur in a public place because she and the officer were inside the officer's car. Concluding that the statute defining "public place" as applied to "public street" is ambiguous, the district court held that the meaning of "public place" is a place in which the public is likely to be present and that the purpose of the statute is "to protect citizens from being unwitting witnesses to the agreement that constitutes the criminal conduct." Thus, according to the district court, it is the visible act of prostitution at which the statute is aimed. The majority agrees and both hold that the rule of lenity compels the result that they reach.

Preliminarily, as we explained in *State v. Collins*, the purpose of the rule of lenity "is to ensure that 'criminal statutes will provide fair warning concerning conduct considered illegal.'" 580 N.W.2d 36, 41 (Minn.App.1998) (quoting *Liparota v. United States*, 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985)), *review denied* (Minn. July 16, 1998). The district court and the majority appear to believe that the rule of lenity requires the narrowest possible reading of a criminal statute

---

1. "Public place" is defined in Black's Law Dictionary, and that definition has been cited in a weapons-possession case. *See State v. Hicks*, 583 N.W.2d 757, 760 (Minn.App.1998), *review denied* (Minn. Oct. 20, 1998). But, as discussed above, the statute at issue here de- fines "public place" in terms of specific locations. And the ambiguity here arises not from the term "public place" itself, but the inclusion of "public street" within the statutory definition of that term.

so as to benefit a defendant. But the rule does not require that. Rather, it requires only that reading which may be said to give "fair warning" of the conduct subject to penalty. Thus, a broad statute, such as we have here, might nevertheless satisfy lenity if it can be reasonably said that the statute, despite its breadth, gives fair warning of the illegal conduct. I believe the statute in question gives that warning and that the majority's interpretation renders the statute unrealistic in its practical application to a significant societal problem.

The legislature has chosen to make prostitution a crime. Minn.Stat. § 609.324, subd. 3 (2002). If the prostitution occurs in certain public places, the legislature has chosen to make it a more serious crime. *Id.*, subd. 2. The district court and the majority suggest that the legislature's aim in enhancing the penalty for public prostitution is to protect members of the public from seeing or hearing the transaction of prostitution services. Implicit in this ruling is the notion that the legislature did not intend the more serious penalty for prostitution conducted discreetly and out of the sight and earshot of the law-abiding public. This is the logical extension of the district court's and majority's reasoning.

Under this reasoning, the legislature has turned its gross-misdemeanor eyes and ears away from the salaciously dressed prostitute who comes to a public area solely to engage in prostitution, stands provocatively on a street corner, waves at passing cars in hopes of getting some to stop, and then, when one does stop, leans through the car window and whispers the offer of sex for money.

I think the district court and the majority have adopted an ingenuous approach to the intent of the statute. Noting the breadth of the definition of "public place,"

I suggest that the legislature did not intend to restrict the enhanced penalty to only overt communication audible enough to be overheard by passersby. Rather, I urge that the purpose of the definition is to discourage prostitutes from coming at all to places in which the public is frequently found. The places listed in the definition are places prostitutes are most likely to be found because those also are places customers are likely to be found. The purpose of the statute is to curtail prostitution and not merely to cause it to become unobtrusive to the public.

The district court's and majority's reading of the meaning of "public street" is untenably selective and forces a similar selective reading of the other places defined as public. The district court and the majority have engrafted onto "public street" an exception for a prostitution transaction that takes place in the relatively private interior of a motor vehicle on a public street. To be consistent, the majority must then read exceptions into hotel, motel, bar, and restaurant. Thus, prostitution is subject to the enhanced penalty if it takes place in a hotel or motel, unless it occurs in private rooms out of the view and earshot of the public. And acts of prostitution will incur the enhanced penalty if they happen in bars and restaurants, unless they take place in those quiet corner tables in the backs of the rooms or in booths screened a bit from the public.

The majority's reading also forces the predicament of how to apply the statute to a public accommodation, such as a taxicab or a public bus, when it is on a public street. Although the statute expressly includes "public accommodation" within its purview, the majority's approach virtually writes that definition out of the statute if the public accommodation is on a public street.

The majority suggests that had the legislature intended to include within the gross-misdemeanor sanction the interiors of motor vehicles on public streets, it could have said so. But considering the breadth of the prohibition—that these acts cannot be done *anywhere* in streets or motels or bars—it is more likely that the legislature would have provided an exception for places of privacy found within larger public settings, had it intended to exclude certain areas from the reach of the statute.

Finally, I think it reasonable to conclude that the legislature intended the term "street" as both literal and figurative. The hue and cry that we must "rid our *streets* of crime," or the thought that we can keep children from getting into trouble by "keeping them off the *streets*," surely are not intended to refer only literally to actual streets.

White's act of prostitution occurred on a public street, albeit within a car. But if the legislature's goal is to curtail prostitution in public, as I believe it is, then the majority's decision fails to give effect to that goal, and I would reverse.