McKEIG, Justice.
Appellant Mohamed Musa Jama was convicted of gross-misdemeanor indecent exposure for conduct that occurred on a public sidewalk in the presence of children who were under the age of 16. On appeal, Jama contends that the indecent-exposure statute, Minn. Stat. § 617.23, subd. 2 (2018), requires the State to prove that he engaged in conduct with a specific intent to be lewd and, therefore, the court of appeals erred when it affirmed the district court's denial of his request for a jury instruction on the defense of voluntary intoxication. Because the indecent-exposure statute does not require the State to prove that the defendant had a specific intent to be lewd, we affirm.[1]
*634 FACTS
On July 5, 2015, Jama approached a family gathering in the front yard of a home in south Minneapolis. While standing on the public sidewalk, Jama pulled out his penis and fondled it with his hands as he gyrated his body in a manner that simulated sexual intercourse. At one point during the exposure, he was within 5 feet of 4 young children-2 infants, a 6-year old, and a 12-year old. After an unsuccessful attempt to stop Jama from exposing himself, a witness called 911. Jama was arrested at the scene.
Respondent State of Minnesota charged Jama with indecent exposure in the presence of a minor under the age of 16. See Minn. Stat. § 617.23, subd. 2. Jama gave notice to the State of his intent to assert the defense of voluntary intoxication. Concluding that the indecent-exposure statute creates a general-intent crime, the district court denied Jama's request that the jury be instructed on the defense of voluntary intoxication because that defense only applies to specific-intent crimes. The jury found Jama guilty, and the court of appeals affirmed his conviction. We granted Jama's petition for review.
ANALYSIS
Resolution of Jama's appeal requires a review of the difference between general and specific intent crimes. An offense is considered a general-intent crime "[w]hen a statute simply prohibits a person from intentionally engaging in the prohibited conduct." State v. Fleck , 810 N.W.2d 303, 308 (Minn. 2012) (citing 1 Wayne R. LaFave, Substantive Criminal Law § 5.2(e) (2d ed. 2003) (explaining that general intent requires an "intention to make the bodily movement which constitutes the act which the crime requires")). Put differently, a general-intent crime requires the State to prove that the offender committed the prohibited act volitionally or deliberately, as opposed to accidentally. Fleck , 810 N.W.2d at 310-12. "It is not necessary that [the offender] intend the resulting harm or know that his conduct is criminal. So long as the offender has voluntarily done the act, the crime has been committed." State v. Wilson , 830 N.W.2d 849, 853 (Minn. 2013) (quoting 9 Henry W. McCarr & Jack S. Nordby, Minnesota Practice-Criminal Law & Procedure § 44.3 (4th ed. 2012)).
Specific-intent crimes require more. A specific-intent crime requires a mental state " 'above and beyond any mental state required with respect to the actus reus of the crime.' " Fleck , 810 N.W.2d at 308 (quoting LaFave, Substantive Criminal Law § 5.2(e) ). The relevant characteristic is " 'an intent to cause a particular result.' " Wilson , 830 N.W.2d at 853 (quoting Fleck , 810 N.W.2d at 308 ). For example, the specific-intent crime of assault-fear requires the State to prove that the offender not only voluntarily committed the act in question, but also that the offender did so with the additional intent to cause fear of immediate bodily harm in another. Fleck , 810 N.W.2d at 312.
Keeping the distinction between general and specific intent crimes in mind, we now turn to the arguments of the parties regarding the intent required by the indecent-exposure statute.
I.
Jama contends that our interpretation of the indecent-exposure statute in State v. Peery , 224 Minn. 346, 28 N.W.2d 851 (1947), added a specific-intent requirement to the offense. See Friedlander v. Edwards Lifesciences, LLC , 900 N.W.2d 162, 165 (Minn. 2017) (stating that when we interpret a statute "our interpretation becomes part of the statute" (citation omitted) (internal quotation marks omitted)).
*635 He further contends that we reaffirmed the existence of such an element in State v. Stevenson , 656 N.W.2d 235 (Minn. 2003).
In Peery , the State charged the defendant with indecent exposure after several young women saw him standing nude in front of his dormitory window. 28 N.W.2d at 853. There was no evidence that Peery had signaled or called to the women or otherwise attempted to direct their attention to himself. Id. Following a court trial, Peery was found guilty as charged. Id. at 852. On appeal, Peery argued that the State's evidence was insufficient to "establish that his exposure was willful or intentionally lewd." Id. at 854. In support of his argument, Peery emphasized the State's failure to present any evidence that he had called to the women, as well as his testimony that he did not intend for the passersby to see him nude, was not conscious of passersby on the days in question, and had accidentally neglected to draw the shades. Id. at 853. We reversed Peery's conviction, explaining that "[o]rdinary acts or conduct involving exposure of the person as the result of carelessness or thoughtlessness do not themselves establish the offense of indecent exposure." Id. at 854. As part of our analysis, we also said that Peery's actions in the privacy of his room required a finding that the offense "was committed with the deliberate intent of being indecent or lewd." Id.
According to Jama, our use of the phrase "deliberate intent of being indecent or lewd" added a specific-intent element to the indecent-exposure statute. We disagree. The word "deliberate" is often used to draw a distinction between volitional acts and accidental acts. See, e.g. , Houston v. Int'l Data Transfer Corp. , 645 N.W.2d 144, 149 (Minn. 2002) (explaining that conduct is intentional when it is "deliberate, and not accidental" (internal citation omitted)); Webster's Third New International Dictionary 2617 (2002) (defining "willful" as "done deliberately" as opposed to "accidental[ly]"). When our use of the phrase "deliberate intent of being indecent or lewd" is viewed in light of the common usage of the word "deliberate," as well as the specific facts of Peery , it simply requires the State to prove that the lewd exposure was volitional, as opposed to accidental.
This reading of Peery is consistent with our subsequent decision in Stevenson , 656 N.W.2d at 237. The defendant in Stevenson was arrested for masturbating in his truck, which was parked facing a playground. Id. Like Jama, Stevenson was convicted of gross-misdemeanor indecent exposure under Minn. Stat. § 617.23, subd. 2(2). 656 N.W.2d at 237-38. The court of appeals determined that Stevenson's conduct occurred in a "public place," because he had a diminished expectation of privacy in his truck. Id. at 240. We affirmed the court of appeals, but said that its analysis "partially misconstrues Peery ." Id. The concept of public in Peery "was not based on the privacy expectations of the defendant," and instead focused "on the likelihood that the conduct would be witnessed by others." Id. at 241. In other words, "[t]he relevant question [was] whether Stevenson's conduct was so likely to be observed 'that it must be reasonably presumed that it was intended to be witnessed.' " Id. (quoting Peery , 28 N.W.2d at 854 ). We emphasized that "[t]o establish intent where the act does not occur in a public place or otherwise where it is certain to be observed , some evidence further than the act itself must be presented." Id . at 240 (quoting Peery , 28 N.W.2d at 854 ) (emphasis added).
As part of our analysis in Stevenson , we quoted Peery for the proposition that the State must show that the charged conduct was committed with the "deliberate *636 intent of being indecent or lewd." Id. at 240. But, as the rest of our analysis in Stevenson made clear, it is the nature and location of the exposure that impacts the certainty of the observation -not the person's subjective intent. Compare Peery , 28 N.W.2d at 853 (involving a naked defendant, who accidentally forgot to pull the shades to his dorm room), and Stevenson , 656 N.W.2d at 241 n.5 (explaining that a person who skinny dips in the Boundary Waters Canoe Area would not be guilty of indecent exposure because the likelihood that the conduct would be witnessed is small), with State v. Prince , 296 Minn. 490, 206 N.W.2d 660 (1973) (involving a defendant who "stood completely naked in the doorway of his home and attracted the attention of three passing high school girls by saying, 'Hi, girls.' "). When our use of the phrase "deliberate intent of being indecent or lewd" is viewed in context of our overall analyses in Peery , Stevenson , and Prince , the phrase does not add an element of specific intent to the offense of indecent exposure. Instead, it requires the State to prove that the openly lewd exposure was volitional, as opposed to accidental. Having concluded that our previous interpretations of the indecent-exposure statute did not add an element of specific intent, we turn our attention to the language of the indecent-exposure statute.
II.
According to the parties, the plain and unambiguous language of the indecent-exposure statute supports their competing arguments on the issue of whether the statute creates a general- or specific-intent crime. For the reasons that follow, we conclude that the State's position is correct.
Whether the language of a criminal statute requires a general or specific intent is a question of statutory interpretation, which we review de novo. Wilson , 830 N.W.2d at 852. The goal of statutory interpretation is to ascertain and effectuate the intent of the Legislature. State v. Struzyk , 869 N.W.2d 280, 284 (Minn. 2015). The first step of such an inquiry is to determine whether the statute's language, on its face, is unambiguous. Wilson , 830 N.W.2d at 853. When a statute does not define a word or phrase, we construe words or phrases according to their plain and ordinary meaning. Fleck , 810 N.W.2d at 307. In determining the plain and ordinary meaning of a word or phrase, we may consider dictionary definitions. State v. Haywood , 886 N.W.2d 485, 488 (Minn. 2016).
Jama was convicted of gross-misdemeanor indecent exposure under section 617.23, subdivision 2, which makes it a crime to violate subdivision 1 of the statute while in the presence of a minor under the age of 16. Subdivision 1 provides:
A person who commits any of the following acts in any public place, or in any place where others are present, is guilty of a misdemeanor:
...
(3) engages in any open or gross lewdness or lascivious behavior, or any public indecency other than behavior specified in this subdivision.
Minn. Stat. § 617.23, subd. 1(3) (emphasis added).[2]
The State argues that the plain and ordinary meaning of the phrase "engages *637 in" unambiguously creates a general-intent crime.[3] We agree. As used in the phrase "engages in," the word "engages" is an intransitive verb, which is a verb that does not modify an object.[4] When used as an intransitive verb, the word "engages" means "to do or take part in something" and is "used with [the word] 'in.' " Merriam-Webster's Collegiate Dictionary 413. As a result, the plain and unambiguous language of subdivision 1(3) of the indecent-exposure statute prohibits a person from volitionally, as opposed to accidentally, doing an openly lewd act. Because the statute simply prohibits a person from intentionally engaging in the prohibited conduct (an openly lewd act), the offense of indecent exposure is a general-intent crime.[5] As a result, the court of appeals did not err when it affirmed the district court's denial of Jama's request for a jury instruction on the defense of voluntary intoxication.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.

Relying on his contention that the indecent-exposure statute requires the State to prove that he engaged in the conduct with a specific intent to be lewd, Jama also argues that the district court committed plain error when it failed to instruct the jurors on the element of specific intent. Because the indecent-exposure statute does not require the State to prove that the defendant had a specific intent to be lewd, this argument is unavailing.

Because the parties agree that subdivision 1(3) applies here, we do not consider the other provisions of subdivision 1. We also observe that Jama's conduct-fondling his exposed penis as he gyrated in a manner that simulated sexual intercourse, while on a public sidewalk in the presence of children-plainly falls within the definition of open lewdness. See Prince , 206 N.W.2d at 660 (affirming an indecent-exposure conviction when the defendant stood naked in the doorway of his home and attracted the attention of passersby).

The State also asserts that subdivision 1(3) of the indecent-exposure statute created a general-intent crime because the Legislature did not use any of the definitions of intent set forth in Minn. Stat. § 609.02, subd. 9 (2018). Because the phrase "engages in" unambiguously reflects a general-intent crime, we need not consider this argument.

The word "engages" also means "to hold the attention of." Merriam-Webster's Collegiate Dictionary 413 (11th ed. 2003). When used this way, the word "engages" is a transitive verb, and must modify an object. Id. (providing as an example, "Her work engages her completely."). But this definition of "engage" does not apply here because section 617.23 does not use the word "engages" to modify a noun.

This conclusion is consistent with the history of the crime of indecent exposure. Regulation of indecent exposure has been a general-intent crime at common law in England for several hundred years. See Rex v. Crunden (1809) 170 Eng. Rep. 1091, 1091; 2 Camp. 89, 90 (affirming the defendant's conviction of indecent exposure for stripping to bathe in the sea "[w]hatever his intention might be"); 4 William Blackstone, Commentaries on the Laws of England 64 (1765) (discussing the common law crime of indecent exposure).