## RALPH PERRYMAN v. STATE.

No. A-2125.    Opinion Filed September 18, 1916.

(159 Pac. 937.)

1.  DEFENSE—"Voluntary Intoxication." The fact that one person gives another intoxicating liquor, which he voluntarily drinks, does not render his intoxication involuntary. Involuntary intoxication never exists where the person intoxicated knows what he is drinking, and drinks the intoxicant voluntarily, and without being made to do so by force or coercion.

2.  HOMICIDE—Defenses—Intoxication. Involuntary intoxication is no defense or excuse for the commission of crime, but in a prosecution for murder may be considered by the jury, only for the purpose of determining whether or not the accused, at the time of the homicide, was capable of forming and entertaining a premeditated design to effect death.

3.  TRIAL—Instructions. A court is not required to instruct the jury upon the defendant's theory of a case, unless there is some competent evidence tending reasonably to substantiate such theory.

4.  HOMICIDE—Offenses—Intoxication. Though one be voluntarily intoxicated, if he was so drunk that he did not have power, at the

time of the homicide, to form and entertain a premeditated design to effect the death of the deceased, and there is no evidence of malice and premeditation prior to the intoxication, then in such a case the accused is guilty of manslaughter in the first degree, and not murder.

5.    **HOMICIDE—Defenses—Intoxication.** Alcoholic insanity, or mental incapacity produced by voluntary intoxication, existing only temporarily at the time of the commission of the homicide, is no excuse or defense in a prosecution therefor. Drunkenness is one thing, and the disease of the mind to which drunkenness leads is a different thing. Temporary insanity, occasioned immediately by drunkenness, does not destroy responsibility for crime. But to constitute insanity, caused by intoxication, a defense to an indictment or information for murder, it must be insanity caused by chronic alcoholism, and not a mere temporary mental condition.

*Error from Superior Court, Tulsa County;*
*M. A. Breckenridge, Judge.*

Ralph Perryman was convicted of manslaughter in the first degree, and he brings error. Affirmed.

*Davidson & Williams,* of Tulsa, for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

BRETT, J.  The plaintiff in error in this case, who will be referred to as defendant, killed one Charles Smith in the town of Jenks, Tulsa county, on the night of April 29, 1912, and was found guilty of manslaughter in the first degree, and sentenced to 12 years in the penitentiary. The defendant killed deceased in a bootleg and gambling joint run by one C. C. Upton. The defendant was not quite 17 years old when he committed the crime, but at that age seems to have been addicted to the habit of drinking and gambling. The evidence is that he drank some at another place before entering the Upton joint, and that when he went in there, Upton engaged him in a game of "twenty-one," and during the progress of the game gave him a number of drinks of whisky, and played with him at this game until he won all the money the defendant had on his person. Defendant then left the joint, and was gone some time, but came back again, and tried to sell a Winchester rifle he had with him. While Upton was counting his money, preparatory to closing, defendant

remarked that he believed he would hold him up. No one took the remark seriously. But a few minutes later, with his rifle in hand, he ordered Upton and the three or four men remaining in the joint to line up against the wall. All lined up except Smith, the deceased. Defendant turned to Smith saying: "Didn't I tell you to line up?" Smith replied that he refused to do so. Thereupon the defendant shot Smith, killing him instantly. He then shot Upton, inflicting a flesh wound; also shot at one Dr. Norwood, the bullet passing through the clothing, but missing the body.

Defendant testified that Upton gave him the whisky that made him drunk, and that he was so drunk that he had no recollection of returning to the joint, or of anything that transpired after his return; that he had no recollection of having ever seen Smith, or of ordering the "line up," or of firing the fatal shot. And the theory of the defense is based upon this testimony. It is insisted here, and was also insisted in the lower court: First, that because Upton gave defendant the whisky that made him drunk, for the purpose of robbing him in the gambling game, his intoxication was involuntary; and, second, that he was so drunk that his intoxication produced a state of temporary insanity; and that for these reasons, he should not be held responsible for the crime committed, and should go unpunished. The defendant requested the trial court to instruct the jury to that effect; but the court properly refused to give the requested instructions.

The theory of the defendant is based upon an entirely erroneous assumption. In the first place, the fact that one person gives another intoxicating liquor, which he voluntarily drinks, and upon which he becomes drunk, does by no means render his intoxication involuntary. In fact, involuntary intoxication is a very rare thing, and can never exist where the person intoxicated knows what he is drinking, and drinks the intoxicant voluntarily, and without being made to do so by force or coercion.

Besides, involuntary intoxication is no defense or excuse for the commission of crime, but may be considered in a prosecution

for murder only for the purpose of enabling the jury to determine whether or not the accused, at the time of the homicide, was capable of forming and entertaining a premeditated design to effect death. Wharton on Homicide (3d Ed.) p. 811, lays down the correct rule, and the one adopted by this court, as follows:

"Intoxication, though involuntary, is to be considered by the jury in a prosecution for murder in the first degree, in which a premeditated design to effect death is essential, with reference to its effect upon the ability of the accused at the time to form and entertain such a design, not because, per se, it either excuses or mitigates the crime, but because, in connection with other facts, an absence of malice or premeditation may appear."

If the jury should find that malice and premeditation existed prior to the involuntary intoxication, in that event it would not ever reduce the crime from murder to manslaughter in the first degree. But, if no malice or premeditation is shown to have existed prior to the homicide, then it is a question for the jury to determine whether or not such intoxication rendered the accused, at the time of the homicide, incapable of forming and entertaining a premeditated design to effect death.

2. The defendant complains of the instructions given by the court; but we have examined the instructions given, and find that the errors in the instructions are favorable to the defendant; hence he cannot complain. The court instructed the jury, in part, to the effect that, if they found the homicide was committed by defendant while in a state of involuntary intoxication, they should acquit him. There are two errors in the giving of this instruction: First, there was no evidence upon which to base an instruction with reference to involuntary intoxication. Neither the defendant nor any other witness testified that the defendant did not voluntarily drink the whisky furnished him, or that it was drugged, or that the intoxication was produced by reason of anything except the unusual quantity he drank. Hence his intoxication could not have been involuntary. And it is the rule of this court, and the law generally, that the court is not required to instruct upon the defendant's theory of the case, unless there

is some competent evidence tending reasonably to substantiate such theory. *Gransden v. State* (on rehearing), 158 Pac. 162, not yet officially reported.

And again, as stated above, involuntary intoxication does not, as it was erroneously charged by the court in this instruction, excuse the commission of crime. But the court very clearly and properly instructed the jury that, if they found that the defendant was voluntarily drunk, and so intoxicated that he did not have power to form or entertain a premeditated design to effect the death of the deceased, at the time of the homicide, then he would not be guilty of murder, but of manslaughter in the first degree. There was no evidence that defendant had ever seen deceased before; hence the question of malice and premeditation prior to the time the act was committed did not enter into this case. And this instruction was correct. And the verdict of the jury finding the defendant guilty of manslaughter in the first degree is fully sustained by the law and the evidence.

3. The position of the defendant that he was so drunk that his intoxication produced a state of temporary insanity and therefore he was not responsible for the crime committed, is fully answered in *Cheadle v. State,* 11 Okla. Cr. 566, 149 Pac. 919, L. R. A. 1915E, 1031. Judge Doyle in that opinion says:

"Alcoholic insanity or mental incapacity produced by voluntary intoxication, existing only temporarily at the time of the commission of the homicide, is no excuse or defense in a prosecution therefor. Drunkenness is one thing, and the disease of the mind to which drunkenness leads is a different thing. Temporary insanity occasioned immediately by drunkenness does not destroy responsibility for crime, where the defendant, when sane and responsible, voluntarily makes himself drunk. To constitute insanity caused by intoxication a defense to an indictment or information for murder, it must be insanity caused by chronic alcoholism, and not a mere temporary mental condition."

And the opinion supports this position by quotations from a long list of authorities, which it is unnecessary for us to here

repeat. This doctrine is almost universal, and the one to which this court is committed.

The judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.