STATE v. JAMES D. O'DONNELL.

158 N. W. (2d) 699.

May 3, 1968—No. 40,595.

*C. Paul Jones,* State Public Defender, and *Bruce D. Willis,* for appellant.

*Douglas M. Head,* Attorney General, and *David J. Byron,* Special Assistant Attorney General, for respondent.

NELSON, JUSTICE.

This is an appeal from a judgment of the District Court of Wright County finding defendant, James D. O'Donnell, guilty of aggravated forgery.

The facts are as follows: On March 5, 1966, the date of the alleged offense, defendant left his home in St. Louis Park, Minnesota, at approximately 9 a. m. and drove to St. Paul where he began drinking. Before leaving his house, defendant took two pills described as tranquilizers, which had been given him by a cousin. Defendant remained in St. Paul until sometime in the afternoon, consuming between 8 and 10 drinks of vodka and orange juice at 3 or 4 different establishments. He then returned to St. Louis Park at approximately 2 p. m. and picked up his family.

Defendant testified that he intended to drive west from Minneapolis but instead got on a highway which headed north toward St. Cloud. At 2:30

or 3 p. m. he stopped his car at a service station where he bought some gasoline and took another tranquilizer. At 3:30 or 4 p. m. defendant stopped at the Hollywood Motel in Clearwater, Minnesota, 14 miles southeast of St. Cloud.

Defendant testified that he remembered driving past the motel and the next thing he remembered was being back in the motel office. Defendant registered at the motel under the name of "Jack Williams," giving a fictitious address in Eau Claire, Wisconsin. He then signed a $10 check drawn on the First Wisconsin National Bank of Eau Claire to pay for the room, using the same name and address.

At approximately 10:30 p. m. that evening, Wright County Deputy Sheriff James F. Powers stopped at the cafe operated in conjunction with the motel. While the officer was drinking coffee, defendant entered the cafe and ordered a couple of sandwiches. The officer thought he recognized defendant from a picture circulated among local law-enforcement authorities, since defendant was wanted in connection with other alleged offenses and for escaping from the Hennepin County Workhouse. When approached by Deputy Sheriff Powers, defendant again claimed to be "Jack Williams" from Eau Claire, Wisconsin, but when he was unable to produce any identification, the officer took him to the county jail where he was booked. When the officer returned to the jail the following Monday morning, defendant admitted that he was James O'Donnell, and not Jack Williams, and he was held for trial for forging the check at the motel.

During the trial evidence was produced on the part of the state which tended to prove that the car which defendant was driving when he stopped at the motel was rented from a Hertz Agency by defendant the previous day in Eau Claire. It was shown that defendant had paid for the rental with a check drawn on the First Wisconsin National Bank of Eau Claire and signed with his correct name, James O'Donnell. It was also shown that the check was worthless, since defendant had no account at the bank.

Defendant in his own defense testified to the degree of intoxication produced by the drinking he had done earlier during the day of the alleged offense. He also testified to a long history of drinking problems. At the

time of the trial defendant was 27 years of age. Eight years earlier, he had received a discharge from the Air Force as an undesirable because of his drinking and had voluntarily committed himself to Willmar State Hospital for treatment for alcoholism. During the following years, defendant returned once to Willmar and was treated at three other institutions for alcoholism. He was last treated only two months before committing the offense for which he was being tried.

Both the prosecution and the defense finished presenting their sides of the case during the first day of trial, March 17, 1966. That evening the jury separated, with a caution from the judge to avoid discussing the case with anyone, including their spouses. The same day, March 17, the Wright County Journal Press, a weekly newspaper published at Buffalo, Minnesota, carried an article about defendant's arrest. Defendant in his brief specifically objects to the following portion of the article:

"* * * It was believed by the deputy that this person was 'James O'Donnell' of St. Louis Park wanted in connection with passing no account checks in Minnesota and Wisconsin and Forgery in both states and for a recent escape from the Hennepin County Workhouse."

The newspaper very likely reached subscribers during the afternoon or evening of March 17. Whether any of the jurors had access to this paper does not appear in the record. On March 18, when court reconvened for final arguments by counsel and the instructions to the jury by the trial court, counsel for defendant immediately addressed the bench as follows:

"I want to make two motions: One for my dismissal based on the lack of evidence; and the second motion that the statements published in the Wright County Journal Press on Thursday, March 17, 1966, are prejudicial and inflammatory and result in defendant not being able to have a fair trial."

To this the court answered by the following ruling:

"They will both be denied."

Thereupon, counsel proceeded with their arguments and the court with its instructions to the jury.

The court in the course of its charge made a general reference to the newspaper publication complained of as follows:

"I may say to you at this time that if any of you may have read the local newspaper today, please completely discharge from your mind anything that you found, saw in that paper. There are erroneous statements made therein. I don't know, have no way of knowing whether any of you have read it but if you have, please disregard it."

The court also instructed the jury:

"* * * [T]he issue in this lawsuit may be stated in one sentence. The only issue in this case is did the defendant wilfully utter the check in evidence knowing it to be forged and with intent to defraud.

\* \* \* \* \*

"* * * [I]t is the law of this state that no act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition but when the actual existence of any particular intent is a necessary element to constitute a particular crime, the fact of his intoxication may be taken into consideration in determining intent.

"Defendant has testified that he did not intend to utter the check in evidence * * * and has no recollection of the occurrence."

The jury, after deliberating 47 minutes, returned a verdict of guilty of aggravated forgery as charged in the information.

Defendant on this appeal contends that the court erred "in denying Appellant's motion for a mistrial on the ground of prejudicial newspaper publicity" and in not polling the jury to determine the effect of the article on them. It must be noted that at no time prior to the return of the verdict of the jury did defendant move for a mistrial in connection with the motion relating to the publication, his motion being limited to the statement that "the statements [therein] are prejudicial and inflamatory and result in defendant not being able to have a fair trial." There was no attempt on the part of the defense to reopen the case.

There is nothing to indicate that defendant at the time of making his motions for dismissal presented to the court a copy of the published

article or had it entered in the record, coupled with a request for a mistrial. He made no further statement before the court in clarification of the second motion, nor did he ask to have the jury polled in connection with the newspaper article. It was incumbent upon counsel for the defense to state to the court his purpose in the motion for dismissal made at the close of the evidence if he intended to ask for a mistrial. Had the proper foundation been laid therefor by offering the article for the record, it would then have been in order for counsel to request the court to poll the jury for the purpose of ascertaining whether any juror had seen or read such newspaper article. No such procedure was undertaken.

Counsel for the defense might have asked the court for the right to reopen before proceeding with the arguments because of the alleged objectionable statements in the newspaper article. Nevertheless, the court fully admonished the jury that if they had read the article they should completely disregard and discharge from their minds anything that they might have seen in it.

Defendant contends that it was the duty of the court under the circumstances disclosed by the record to poll the jury in order to determine if they had read the article. He did not request that this be done and we do not think that the motion made required the court to do so sua sponte.

We agree with the state's contention that the instant case clearly fails to present a situation where the "totality of circumstances" presents a strong probability that prejudice would result so as to require a reversal without a showing of prejudice. Defendant made no such showing. In the light of the trial court's specific directive to the jury to disregard any newspaper articles, the totality of circumstances does not give rise to a strong probability of prejudice.

In Malone v. Crouse (10 Cir.) 380 F. (2d) 741, 744, we have facts similar to those in the instant situation. The defendant in that case was convicted in the Kansas courts of the crime of forgery. On the night before the closing arguments and the submission of the case to the jury, the local newspaper published an article about the defendant and his criminal record. The Kansas Supreme Court denied the defendant's

claim of prejudicial publicity, observing that he had "failed to make any prejudice appear." State v. Malone, 194 Kan. 563, 572, 400 P. (2d) 712, 720. The United States Circuit Court of Appeals agreed, stating (380 F. [2d] 744):

"* * * The United States District Court adopted the findings of the state courts and concluded that the jury was not subjected to influence amounting to a denial of due process of law. We agree. The totality of circumstances in the case at bar is not remotely comparable to that with which the Supreme Court was concerned in Sheppard v. Maxwell, 384 U. S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600."

We fail to see how Marshall v. United States, 360 U. S. 310, 79 S. Ct. 1171, 3 L. ed. (2d) 1250, upon which defendant relies, supports his position on this appeal. See, Halko v. Anderson (D. Del.) 244 F. Supp. 696; State v. Collins, 276 Minn. 459, 150 N. W. (2d) 850; People v. Gambino, 12 Ill. (2d) 29, 145 N. E. (2d) 42.

In State v. Thompson, 273 Minn. 1, 33, 139 N. W. (2d) 490, 513, certiorari denied, 385 U. S. 817, 87 S. Ct. 39, 17 L. ed. (2d) 56, this court said:

"* * * [B]efore the fact that a juror may have read a newspaper article discussing certain aspects of the case will furnish the basis for a new trial it must appear (1) that the juror did read such article and was influenced therby to the prejudice of the defendant; and (2) that, having knowledge of the fact prior to the submission of the case to the jury, the defendant requested appropriate action, by the court.

"If, having knowledge of the alleged misconduct, defendant chooses nevertheless to proceed with the trial to completion, it must be held that he has waived the irregularity.

"The same rule is followed here as with respect to other misconduct of the jury. Whether a new trial should be granted or not rests largely in the discretion of the trial court, who has an opportunity to ascertain whether any prejudice has resulted."

See, also, State v. Collins, 276 Minn. 459, 150 N. W. (2d) 850.

Here, where defendant knew of the newspaper article and made no

effort to ascertain whether any of the jurors had read it or had been prejudicially affected by so doing, but chose to proceed with the trial to completion, it must be held that he has waived the right to claim on appeal that the article deprived him of a fair trial.

As we have already stated, the record herein clearly fails to present a situtation where the totality of circumstances is such as to require a reversal without a clear showing of prejudice. This is especially true in light of the fact that the record does not establish the presentation of a motion for a mistrial, supported by a proper foundation. No basis for requiring the trial court to poll the jury upon the record herein has been established.

■ Defendant contends that his testimony about his intoxication at the time of the offense was uncontroverted and conclusively established that he lacked the required intent to commit forgery. He relies upon Minn. St. 609.075, which provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

Defendant admitted that he forged the check to the Hollywood Motel described in the information, but asks this court to reject the determination of the jury on the issue of intoxication and to find as a matter of law that the jury should have found defendant not guilty because of the absence of the required intent to defraud.

This court has often stated the scope of its function in testing the sufficiency of the evidence to sustain the verdict in a criminal case as follows:

"In reviewing the sufficiency of the evidence, we should emphasize that we do not try the facts anew. Our responsibility extends no further than to make a painstaking review of the record to determine whether the evidence, direct and circumstantial, viewed most favorably to support a finding of guilt, was sufficient to permit the jury to reach that conclusion." State v. Kline, 266 Minn. 372, 374, 124 N. W. (2d) 416,

418, certiorari denied, 376 U. S. 962, 84 S. Ct. 1124, 11 L. ed. (2d) 980. See, also, State v. Norgaard, 272 Minn. 48, 136 N. W. (2d) 628.

A careful review of the record, we think, demonstrates that the evidence is more than sufficient to support the jury's finding that defendant was aware of his actions and intended to obtain lodging for himself and his family from the Hollywood Motel by issuing a forged instrument. The difficulty with defendant's contention with reference to his intoxication is that his own testimony clearly demonstrates that his claim of intoxication could be properly rejected by the jury. While he testified that he had several drinks in St. Paul in the morning on March 5, it appears that he quit drinking 2½ hours before he arrived at the motel in Clearwater. He remembered that during this 2½-hour period he drove from St. Paul to his home in St. Louis Park where he picked up his wife and family; that after leaving home with his family in the car he drove for a while and then stopped at a gas station where he purchased soft drinks; and that he drove by the Hollywood Motel once and then returned to it. He remembered also being in the motel office where he inquired as to room rates and then proceeded to fill out a registration card under the fictitious name of Jack Williams.

He testified that he remembered leaving the motel office and returning to the rented car he was driving to obtain for the benefit of the motel the Wisconsin license number. He gave an Eau Claire address, which was placed on the registration card, consistent with the Wisconsin license number and the Eau Claire bank on which the forged check was then drawn. He testified he recalled writing an account number on the check and also the giving of the check to the motel operator. Upon further questioning, he also stated that he remembered going out for a few beers soon after forging the check.

It would seem, based upon the foregoing, that defendant's testimony fairly establishes sufficient support for the decision of the jury rejecting the defense of intoxication. The jury could also have found, supported by the testimony of the motel operator, that defendant did not appear intoxicated when he signed the registration card and gave the forged check. The burden on this issue was of course on the defense. We

concude that a review of the record clearly demonstrates that the jury was justified in rejecting the defense of intoxication. See the recent case of State v. Bonga, 278 Minn. 181, 186, 153 N. W. (2d) 127, 130, where this court held:

"While defendant was no doubt under the influence of the liquor he had consumed, and while his crime was far from artfully executed, we feel that the trial court properly rejected his defense of intoxication."

■ Defendant also contends that evidence of other criminal conduct was improperly admitted. However, the testimony introduced at the trial relating to the no-account check written by defendant on the day before he passed the forged instrument at the Hollywood Motel was properly submitted for the purpose of proving the identity of the accused. Only slight reference was made by the state to the bad check defendant wrote to the Hertz Rental Agency on the day before the instant forgery. The police officer testified only that defendant said he did not have an account at the First Wisconsin National Bank at Eau Claire, and Mr. Hjalmar Terland, the Hertz employee who rented the automobile to defendant at Eau Claire on March 4, testified that he received a check drawn on an account at the First Wisconsin National Bank, signed in the name of "James O'Donnell" and that this instrument was never negotiated.

We have held time and again that evidence of separate and independent crimes of the accused closely connected in time, place, and manner is admissible when it is necessary to identify defendant as the one who committed the crime with which he has been charged. State v. Lucken, 129 Minn. 402, 152 N. W. 769; State v. Barrett, 40 Minn. 65, 41 N. W. 459; State v. Bock, 229 Minn. 449, 39 N. W. (2d) 887. We have also said that the determination of whether independent crimes are so closely connected with that with which an accused has been charged as to be admissible rests largely within the discretion of the trial court and should not be reversed on appeal unless there has been a clear abuse of such discretion. State v. Voss, 192 Minn. 127, 255 N. W. 843; State v. Bock, *supra.* Furthermore, any reference on crosss-examination to the bad check written on March 4 to the Hertz Agency was clearly admissible to establish defendant's criminal intention with regard to the forgery of

the check at the Hollywood Motel. State v. Rose, 70 Minn. 403, 73 N. W. 177.

We conclude that the totality of circumstances disclosed by the record amply supports defendant's conviction of the crime of aggravated forgery beyond a reasonable doubt.

Affirmed.