## STATE, CITY OF MINNEAPOLIS, v. ROBERT WILLIAM ALTIMUS.

238 N. W. 2d 851.

January 9, 1976—No. 44770.

C. *Paul Jones,* State Public Defender, and *Roger Magnuson,* Special Assistant State Public Defender, for appellant.

KELLY, JUSTICE.

Defendant, who was found guilty by a Hennepin County Municipal Court jury of careless driving, Minn. St. 169.13, subd. 2, and hit and run as to an attended vehicle, Minn. St. 169.09, subd. 2, and not guilty of simple assault, Minneapolis Code of Ordinances, § 870.160,[1] was sentenced by the trial court to terms of 30 and 90 days in the workhouse, sentences to be served concurrently with revocation of parole from Federal prison. On this appeal from judgment of conviction, defendant contends that he should receive a new trial because (1) the trial court erred in refusing to instruct the jury on the defense of involuntary intoxication, and (2) the trial court erred in its instructions on the element of intent with respect to the two traffic charges of which he was convicted. After careful consideration, we hold that the trial court erred in refusing to instruct the jury on the defense of temporary insanity due to involuntary intoxication and that a new trial is required.

At 12:15 p.m. on September 28, 1973, defendant, driving south on Hiawatha Avenue, made an illegal left turn from the right-hand lane and crashed into a garbage truck proceeding northward on Hiawatha. Immediately after impact, defendant backed up and drove easterly on Lake Street at a slow speed. This slow speed resulted from the fact that the automobile defendant was

---

[1] The trial court dismissed a charge of driving without a valid license, Minneapolis Code of Ordinances, § 402.010.

driving had been badly damaged in the collision. Policemen who observed the accident followed defendant and stopped him about a block from the point of impact. Defendant, who appeared to one of the officers to be somewhat confused, told the officers that his head and shoulder hurt and asked to be taken to the hospital. In response to questions by the officers, defendant, who gave "William Jones" as his name, stated that he did not have his driver's license with him but showed the officers a paper purporting to be a transfer of title from Robert Altimus to William Jones.

Because of a gap in the evidence, we do not know for certain what happened next, but it appears that an ambulance took defendant to General Hospital and defendant ran away after police discovered his true identity. In any event, we have the testimony of an off-duty uniformed police officer that at about 1:30 p.m. he was on his way to the Minnesota Auto Body Shop at Seventh Street and Park Avenue when another officer told him to be on the lookout for a man fitting defendant's description and that when he got to the body shop he saw the defendant. He testified that defendant refused to identify himself and ran toward the General Hospital construction area, where an altercation occurred when the officer caught him; that defendant then ran to a church at Seventh Street and Chicago Avenue where he broke the officer's nose; and that finally he was apprehended at the St. Barnabas School of Nursing.

At trial, the defense did not dispute the evidence adduced by the state, but introduced evidence designed to show that defendant did not have the requisite state of mind to be guilty of either simple assault or the two remaining traffic charges. Defendant testified that on September 25, 1973, three days before the incident, he had seen a doctor at the Veterans Administration Hospital for treatment of a back problem and the flu and that the doctor had prescribed Valium, which he had taken as prescribed. He testified that on September 28 the Valium began to have a strange effect on him, making it impossible for him to control

himself. He testified that he did not know who owned the automobile which he had driven, and that he remembered nothing about the accident or the events that followed.

The only other defense witness was Dr. Humberto Ortiz, the doctor who treated defendant at the Veterans Administration Hospital. He testified that he prescribed the Valium because it was a skeletal muscle relaxant and was the type of drug which would relieve the acute back pain defendant had been experiencing. He testified that he also prescribed empirin, bed rest, and heat. Dr. Ortiz listed drowsiness, fatigue, ataxia, and confusion as the normal side effects of Valium. He testified, however, that hyperexcitability, although more rare, was also a possible side effect. On cross-examination, he stated that he did not know if the drug might cause one to be confused as to his identity; but in response to a hypothetical question stating the facts of the case, he expressed the opinion that defendant might have been suffering from the effects of the drug.

After resting, the defense requested the trial court to instruct on the defense of involuntary intoxication and submitted proposed instructions to that effect,[2] but the trial court refused to instruct on the defense or to give these instructions. The trial judge did instruct the jury that defendant's alleged intoxication would be a defense to the charge of assault if it rendered him unable to formulate the specific intent to inflict bodily harm on the person of another which is an essential element of the crime

---

[2] The defense submitted the following proposed instructions as to involuntary intoxication: "Intoxication is involuntary when it is produced in a person without his willing and knowing use of intoxicating liquor, drugs or other substance and without his willing assumption of the risk of possible intoxication.

"Proof of the involuntary intoxication of a defendant should be considered by the jury in determining whether the defendant had the capacity or ability to commit any of the four offenses with which he is charged or to form a criminal intent at the time the offenses are alleged to have been committed."

Cf. California Jury Instructions Criminal (3 ed.), §§ 4.23 and 4.24.

of assault. We do not express an opinion as to the propriety of this voluntary intoxication instruction on the assault charge, but we note that we have not decided whether that defense applies to simple assault cases. See, State v. Olson, 298 Minn. 551, 214 N. W. 2d 777 (1974).

The general rule in Minnesota is that voluntary intoxication is a defense to a criminal charge other than drunkenness [3] only if a specific intent or purpose is an essential element of the crime charged and the trier of fact concluded that the defendant's intoxication deprived him of the specific intent or purpose requisite to the alleged offense. [4] Because the traffic offenses with which defendant was charged do not require a specific intent to do a prohibited act, the defense of voluntary intoxication cannot and does not apply to those offenses.

While general traffic offenses do not require that the wrong-doer specifically intend to commit the crime for which he is charged, we have held that before criminal liability can attach it is essential that the defendant intentionally or negligently do the act which constitutes the crime. State v. Kremer, 262 Minn. 190, 114 N. W. 2d 88 (1962). In Kremer we reversed the conviction of a defendant who unintentionally and non-negligently drove through a stop signal because his brakes failed. [5] We acknowledged there that a defendant may be held criminally responsible for some activities, even though he does not criminal-

---

[3] In State v. Fearon, 283 Minn. 90, 166 N. W. 2d 720 (1969), we held that a person suffering from chronic alcoholism could not be convicted of drunkenness under Minn St. 1969, § 340.96 (since repealed by L. 1971, c. 90, § 2, and replaced by Minn. St. 340.961), even though his drunkenness or intoxication was self-induced.

[4] Minn. St. 609.075 provides: "An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

[5] Kremer was convicted of failure to comply with a traffic semaphore in violation of Minneapolis Code of Ordinances, § 413.080.

ly intend the harm caused by his acts, because he "usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." 262 Minn. 192, 114 N. W. 2d 89, (quoting from Morissette v. United States, 342 U. S. 246, 256, 72 S. Ct. 240, 246, 96 L. ed. 288, 297 [1952]). When that duty of due care is breached, the driver may properly be found criminally responsible for a traffic offense. We reversed the defendant's conviction in Kremer because the above rationale did not apply when there was no negligence by the defendant and no intent to do the act which turned out to be criminal. The unusual issue presented on this appeal is whether the defendant is entitled to assert the defense of involuntary intoxication if due to such intoxication he unintentionally and non-negligently did the acts for which he is charged. In brief, we hold that defendant was entitled to an instruction on involuntary intoxication, that the trial court erred in refusing to grant such an instruction, and that a new trial is required.

We begin our analysis of the defense of involuntary intoxication by considering its origins and its relationship to the partial defense of voluntary intoxication. The common-law rule was that voluntary intoxication was never a defense to a criminal charge. Thus, in the first English report of a drunken homicide, Baron Peake formulated the rule that "[v]oluntary drunkenness is no excuse for crime." Pearson's Case, 168 Eng. Rep. 1108, 2 Lew. Cr. Cas. 144, 145 (1835). The common law distinguished involuntary from voluntary intoxication, however, and found the former to be a defense to criminal liability if it caused the defendant to become temporarily insane. Thus, in 1 Hale, History of the Pleas of the Crown 32 (1778), it is said:

"That if a person by the unskilfulness of his physician, or by the contrivance of his enemies, eat or drink such a thing as causeth such a temporary or permanent phrenzy, as aconitum or nux vomica, this puts him into the same condition, in reference to crimes, as any other phrenzy, and equally excuseth him."

The defense of involuntary intoxication has long been recognized by the courts in England and the United States. See, e. g., Pearson's Case, *supra*; People v. Robinson, 2 Parker, Cr. Rep. 235 (N. Y. 1855). See, also, Singh, *History of the Defense of Drunkenness in English Criminal Law*, 49 L. Q. Rev. 528; Annotation, 30 A. L. R. 761.

Four different kinds of involuntary intoxication have been recognized: Coerced intoxication, pathological intoxication, intoxication by innocent mistake, and unexpected intoxication resulting from the ingestion of a medically prescribed drug.[6] Coerced intoxication is intoxication involuntarily induced by reason of duress or coercion. Some courts have declared in general terms that coerced intoxication may be a complete defense to all criminal liability. See, e. g., Burrows v. State, 38 Ariz. 99, 297 P. 1029 (1931); McCook v. State, 91 Ga. 740, 17 S. E. 1019 (1893). In Burrows, the Arizona Supreme Court approved the trial court's instruction which stated that involuntary intoxication would be a complete defense if the defendant was compelled to drink against his will and "his reason was destroyed" so "that he did not understand and appreciate the consequences of his act." 38 Ariz. 114, 297 P. 1035. Courts have strictly construed the requirement of coercion, however, so that acquittal by reason of coerced intoxication is an exceedingly rare result. See, State v. Bunn, 283 N. C. 444, 196 S. E. 2d 777 (1973); Borland v. State, 158 Ark. 37, 249 S. W. 591 (1923); Perryman v. State, 12 Okla. Cr. 500, 159 P. 937 (1916); State v. Sopher, 70 Iowa 494, 30 N. W. 917 (1886).

Pathological intoxication has been defined as "intoxication

---

[6] For a discussion of the history of the defense of intoxication, see Deddens, *Volitional Fault and the Intoxicated Criminal Offender*, 36 U. of Cin. L. Rev. 258; Singh, *History of the Defense of Drunkenness in English Criminal Law*, 49 L. Q. Rev. 528; Hall, *Intoxication and Criminal Responsibility*, 57 Harv. L. Rev. 1045; LaFave & Scott, Criminal Law, § 45. See, also, Note, 55 Col. L. Rev. 1210 (1955); Paulsen, *Intoxication as a Defense to Crime*, 1961 U. of Ill. Law Forum 1.

grossly excessive in degree, given the amount of the intoxicant, to which the actor does not know he is susceptible." Model Penal Code, § 2.08(5)(c), 10 U. L. A. 473. Pathologically intoxicated offenders have been held not criminally responsible for their acts when they ingested the intoxicant not knowing of their special susceptibility to its effects. See, Perkins v. United States, 228 F. 408, 415 (4 Cir. 1915). The defense of pathological intoxication [7] has been limited in some jurisdictions, however, by the requirement that the intoxicated defendant must be deprived of mental capacity to the degree necessary for an insanity defense. See, Martinez v. People, 124 Colo. 170, 235 P. 2d 810 (1951); Kane v. United States, 399 F. 2d 730 (9 Cir. 1968), certiorari denied, 393 U. S. 1057, 89 S. Ct. 693, 21 L. ed. 2d 699 (1969); Deddens, *Volitional Fault and the Intoxicated Criminal Offender*, 36 U. of Cin. L. Rev. 258, 277; Comment, 1969 Utah L. Rev. 419.

Involuntary intoxication may also occur when intoxication results from an innocent mistake by the defendant about the character of the substance taken, as when another person has tricked him into taking the liquor or drugs. LaFave & Scott, Criminal Law, § 45, p. 348. See, People v. Penman, 271 Ill. 82, 110 N. E. 894 (1915); Pribble v. People, 49 Colo. 210, 112 P. 220 (1910). In Penman, the defendant killed his victim after apparently taking cocaine tablets which, due to the deception of another, he believed to be breath purifiers. The Illinois Supreme Court held that this would constitute involuntary intoxication and a full defense to criminal liability if it caused the defendant to become temporarily insane.

The last kind of involuntary intoxication recognized in the case law arises when the defendant is unexpectedly intoxicated due to the ingestion of a medically prescribed drug. Several courts have declared that such intoxication constitutes a valid defense

---

[7] For a review of the literature and case reports on pathological intoxication, see Banay, *Pathological Reaction to Alcohol,* 4 Quar. J. Study on Alcohol 580.

to criminal liability if the prescribed drug is taken pursuant to medical advice and without defendant's knowledge of its potentially intoxicating effects. See, Burnett v. Commonwealth, 284 S. W. 2d 654 (Ky. 1955); People v. Koch, 250 App. Div. 623, 294 N. Y. Supp. 987 (1937); Perkins' v. United States, *supra*; Saldiveri v. State, 217 Md. 412, 143 A. 2d 70 (1958). Cf. Prather v. Commonwealth, 215 Ky. 714, 287 S. W. 559 (1926).

Appellant asserts that due to the ingestion of a prescribed drug, Valium, he was unexpectedly intoxicated to the point of unconsciousness, incapable of controlling his actions, and thus not criminally responsible for his actions. To assess fully the merits of this claim, it is necessary to review carefully the circumstances in which a defense of involuntary intoxication due to ingestion of a prescribed drug is properly available.

The first requirement is that the defendant must not know, or have reason to know, that the prescribed drug is likely to have an intoxicating effect. If the defendant knows, or has reason to know, that the prescribed drug will have an intoxicating effect, then he is voluntarily intoxicated [8] and may plead his voluntary intoxication as a partial defense only as provided for in Minn. St. 609.075.[9]

The second requirement is that the prescribed drug, and not some other intoxicant, is in fact the cause of defendant's intoxication at the time of his alleged criminal conduct.

The third requirement is that the defendant, due to involuntary intoxication, is temporarily insane. The numerous cases cited above in which the common-law defense of involuntary

---

[8] The Model Penal Code, § 2.08(5)(b), 10 U. L. A. 473, defines self-induced intoxication as "intoxication caused by substances which the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know * * *."

[9] Section 609.075 represents a modification of the common-law rule that voluntary intoxication was never a defense to crime. Section 609.075 was intended to mitigate the harshness of that rule and does not in any way affect the corollary common-law rule concerning involuntary intoxication.

intoxication has been recognized are virtually unanimous in holding that this defense is available only when the defendant is legally insane at the time of the alleged criminal offense. We believe that the Minnesota Legislature has already prescribed in Minn. St. 611.026 the test applicable to the defense of involuntary intoxication. Section 611.026 states:

"No person shall be tried, sentenced, or punished for any crime while mentally ill or mentally deficient so as to be incapable of understanding the proceedings or making a defense; but he shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason, from one of these causes, as not to know the nature of his act, or that it was wrong."

We hold that if the defendant is mentally deficient due to involuntary intoxication, then he may be excused from criminal responsibility only if temporarily insane as defined in § 611.026.

Mr. Justice Rogosheske in his special concurrence argues that the insanity test and § 611.026 are not applicable to the defense of involuntary intoxication. He asserts that the better test is that found in the Model Penal Code, § 2.08(4), 10 U. L. A. 473, which states that involuntary intoxication is an affirmative defense if—

"* * * by reason of such intoxication the actor at the time of his conduct lacks substantial capacity either to appreciate its criminality [wrongfulness] or to conform his conduct to the requirements of law."

Several states in enacting statutes expressly defining the defense of involuntary intoxication have followed the above test proposed in the Model Penal Code. See, Ill. Rev. Stat. c. 38, § 6-3 (Smith-Hurd 1972); Kan. Stat. Ann. § 21-3208(1) (1974); Wis. Stat. Ann. § 939.42 (1958). The Minnesota Legislature, however, has passed no statute expressly addressing the test to be applied when a defendant asserts the defense of involuntary intoxication. In the absence of such an express statute on involuntary intoxi-

cation, we adhere to the legislative policy articulated in Minn. St. 611.026. Thus, a defense of involuntary intoxication should be allowed only in cases where the defendant at the time of committing the alleged criminal act was laboring under such a defect of reason because of a mental deficiency caused by involuntary intoxication as not to know the nature of his act, or that it was wrong. See Rule 14, Rules of Criminal Procedure, for application.

In the case of voluntary intoxication, the defendant must establish the defense by a fair preponderance of the evidence. State v. O'Donnell, 280 Minn. 213, 158 N. W. 2d 699 (1968); State v. Corrivau, 93 Minn. 38, 100 N. W. 638 (1904); State v. Grear, 29 Minn. 221, 13 N. W. 140 (1882). Similarly, when insanity is a matter of defense we have held that the defendant must prove by the preponderance of the evidence that he was legally insane; it is not enough that he raise a reasonable doubt as to his sanity. State v. Rawland, 294 Minn. 17, 199 N. W. 2d 774 (1972); State v. Mytych, 292 Minn. 248, 194 N. W. 2d 276 (1972); State v. Finn, 257 Minn. 138, 100 N. W. 2d 508 (1960). In light of the above, we today hold that the defendant in the instant case bears the burden of establishing by the preponderance of the evidence that he was temporarily insane due to involuntary intoxication.

Involuntary intoxication, we note in summary, is a most unusual condition. The circumstances in which an instruction on the defense of involuntary intoxication will be appropriate will accordingly be very rare. We hold, nevertheless, that in the instant case such an instruction was necessary because defendant introduced evidence sufficient to raise the defense of temporary insanity due to involuntary intoxication. Defendant's evidence indicated that at the time he committed the acts in question he was intoxicated and unaware of what he was doing due to an unusual and unexpected reaction to drugs prescribed by a physician. We further believe that failure to give an instruction on involuntary intoxication was prejudicial error in view of the finding of not guilty on the charge of simple assault, a finding

which suggests very strongly that the jury believed defendant's evidence that the Valium was responsible for his behavior.

Reversed and remanded for a new trial.

ROGOSHESKE, JUSTICE (concurring specially).

I agree that this case must be reversed and remanded for a new trial due to a failure below to instruct on the defense of involuntary intoxication. I cannot join the majority opinion, however, because I neither believe that involuntary intoxication is a type of insanity nor that an instruction couched in terms of an insanity defense fits defendant's asserted defense in this unique case.

The premise underlying the defense of involuntary intoxication is that a person should not be held criminally liable in the absence of volitional fault, that is, conscious fault. Thus, in another context, it has been urged that an individual should not be "subject to punishment and loss of dignity or stigmatization through the criminal law unless he violates the law for reasons which were in his power to prevent." Gorham v. United States, 339 A. 2d 401, 440 (D. C. App. 1975) (Fickling, J., dissenting). Stated in other words, "persons should not be punished if they could not have done otherwise, *i. e.*, had neither the capacity nor a fair opportunity to act otherwise." Hart, Punishment and Responsibility, p. 153. See, Rawls, A Theory of Justice, p. 241. In recognition of the above principle, the authors of the Model Penal Code declared that involuntary intoxication is an affirmative defense if—

"* * * by reason of such intoxication the actor at the time of his conduct lacks substantial capacity either to appreciate its criminality [wrongfulness] or to conform his conduct to the requirements of law." Model Penal Code, § 2.08(4), 10 U. L. A. 473.

I would apply the above principle to the case at bar by instructing the jury that defendant should be excused from criminal lia-

bility if defendant establishes by the preponderance of the evidence that due to the ingestion of Valium he was intoxicated to such an extent that he was incapable of exercising reasonable care in operating his automobile, and that he did not know or have reasonable grounds to foresee that in taking the Valium pursuant to his doctor's prescription his mental condition would become such as to render him incapable of exercising reasonable care in driving an automobile. See, Burnett v. Commonwealth, 284 S. W. 2d 654, 659 (Ky. 1955).

The majority opinion declares that involuntary intoxication is a defense only when it causes temporary insanity as insanity is defined in Minn. St. 611.026. In my view, § 611.026 has no application to the defense asserted because involuntary intoxication due to the ingestion of a medically prescribed drug is simply not a form of mental "illness" or "deficiency" as those terms are commonly used. To describe the asserted mental state of defendant in this case as one of insanity stretches that word far beyond its ordinary meaning and gives § 611.026 a construction it is doubtful was ever contemplated by the legislature.

In my opinion, the defense of involuntary intoxication does not rest upon so tenuous a statutory basis. Involuntary intoxication is a defense anchored firmly in the theory of mens rea, which has long been a part of Anglo-American common law. See, e. g., Coke, Third Institute, pp. 6, 56, 107; 4 Wm. Blackstone, Commentaries, pp. 21, 22, 27. Other defenses to criminal liability grounded in the theory of mens rea include infancy, compulsion, necessity, insanity, and in this state, alcohol dependence. State v. Fearon, 283 Minn. 90, 166 N. W. 2d 720 (1969). In Morissette v. United States, 342 U. S. 246, 250, 72 S. Ct. 240, 243, 96 L. ed. 288, 293 (1952), the United States Supreme Court reviewed the development of mens rea and its related defenses to criminal liability and declared:

"The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion.

It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."

The defense of involuntary intoxication, based on the absence of volitional fault by defendant, is properly part of this same system of law.

The majority opinion suggests that this court must defer to the legislative judgment expressed in § 611.026 and allow the defense of involuntary intoxication only when it creates temporary insanity. I do not agree because it has traditionally been the duty of the courts and not the legislature to define the defenses which necessarily follow from the doctrine of mens rea. In Morissette, the Supreme Court observed (342 U. S. 251, 72 S. Ct. 244, 96 L. ed. 294) :

"Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil. As the states codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle [of mens rea] but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation. Courts, with little hesitation or division, found an implication of the requirement as to offenses that were taken over from the common law. The unanimity with which they have adhered to the central thought that wrongdoing must be conscious to be criminal is emphasized by the variety, disparity and confusion of their definitions of the requisite but elusive mental element."

Historically, it has never been suggested that the principle of mens rea "is dependent on the direction of the legislative body. Indeed, much of the case law has evolved by way of implied exceptions (that is, implied by the judges) to apparent express and

476

precise statutory commands." Brett, An Inquiry Into Criminal Guilt, p. 40.

For the reasons stated above, I would direct the trial court to instruct on the defense of involuntary intoxication as provided for in § 2.08(4) of the Model Penal Code.