CLEARY, Chief Judge
Appellant Mohamed Musa Jama challenges his conviction for gross misdemeanor indecent exposure on the grounds that the district court committed plain error by failing to instruct the jury on the requisite intent element of the crime and that the district court erred in refusing to instruct the jury on the statutory defense of voluntary intoxication and on the common-law defense of involuntary intoxication. We affirm.
FACTS
On July 5, 2015, appellant approached a family gathering in the front yard of a residence in Minneapolis, exposed his penis, and danced provocatively. Multiple family members, including three children under the age of 16, witnessed appellant's exposure. During the incident, witnesses attempted to stop appellant from exposing himself, videotaped appellant's conduct, called 911, and eventually removed him from the area in front of their home. When the police arrived, they encountered appellant in the street in front of the residence and arrested him.
Appellant was charged with one count of indecent exposure in violation of Minn. Stat. § 617.23, subd. 2(1) (2014). Prior to the presentation of evidence, the defense made a series of motions stating its intent to rely on the statutory defense of voluntary intoxication and the common-law defense of involuntary intoxication. The district court determined that because indecent exposure is a general-intent crime, appellant was not entitled to an instruction on the statutory defense of voluntary intoxication. But the court ruled that the common-law defense of involuntary intoxication would still be available to appellant, provided he could make a prima facie showing on each element of the defense.
At trial, witnesses testified that appellant exposed himself within five feet of their group during the incident. Video evidence of the incident was played for the jury. Multiple witnesses testified that appellant appeared to be intoxicated and nonresponsive. The arresting officer testified that appellant appeared to be "intoxicated and/or drugged." No tests were conducted to determine what, if any, substances appellant ingested prior to the incident.
Appellant testified that, prior to the incident, he smoked what he believed to be *375 shisha-a flavored tobacco consumed through a hookah-with some men he met that day. He testified that after smoking the substance, he felt dizzy and disoriented. His reaction to the substance intensified and he vomited, blacked out, and woke up in the jail hours later-with no recollection of the incident. Appellant testified that he never experienced a similar reaction to shisha in the past and was not under the influence of any other drugs or alcohol that day. At the conclusion of his testimony, appellant rested and requested that the jury receive the involuntary-intoxication instruction. The district court denied appellant's request for this instruction, finding that appellant failed to make a prima facie showing on any of the elements of the defense. Appellant moved for reconsideration and the district court heard the state's response prior to giving the final jury instructions. The district court denied the motion to reconsider. Appellant was found guilty and convicted of gross misdemeanor indecent exposure in violation of Minn. Stat. § 617.23, subd. 2(1). This appeal follows.
ISSUES
I. Was the district court's jury instruction on the intent element of indecent exposure plain error?
II. Did the district court err in refusing to instruct the jury on the statutory defense of voluntary intoxication?
III. Did the district court err in refusing to instruct the jury on the common-law defense of involuntary intoxication?
ANALYSIS
I. The district court's instruction on the intent element of indecent exposure was not plainly erroneous because indecent exposure is a general-intent crime.
Appellant argues that the inclusion of the word "willful" in the indecent exposure statute and the Minnesota Supreme Court's decision in State v. Peery , 224 Minn. 346, 28 N.W.2d 851 (Minn. 1947), make indecent exposure a specific-intent crime and that the district court's failure to include the "deliberate intent to be lewd" language of Peery in its instructions to the jury constitutes plain error. We disagree.
The district court gave the following instructions regarding the offense of gross misdemeanor indecent exposure:
[W]hoever in any public place or any place where others are present willfully and lewdly exposes the person's body ... in the presence of a minor ... is guilty of a crime. The elements of indecent exposure are: First, the defendant engaged in an open and gross lewdness or lascivious behavior or any public indecency. Second, the defendant's act took place in a public place or any place where others were present. Third, the defendant's acts took place in the presence of ... a minor under the age of 16 years.
The jury instruction matches the pattern instruction for gross misdemeanor indecent exposure. 10 Minnesota Practice , CRIMJIG 12.89, .90 (2006). Appellant did not object to this instruction at trial. We review unobjected-to jury instructions for plain error. State v. Milton , 821 N.W.2d 789, 805 (Minn. 2012). "Under our plain-error test, we consider whether the jury instructions contained an (1) error (2) that was plain and (3) that affected the defendant's substantial rights." Id. If these three prongs are met, this court then decides whether we must "address the error to ensure fairness and the integrity of the judicial proceedings." State v. Griller , 583 N.W.2d 736, 740 (Minn. 1998).
Under the Minnesota indecent-exposure statute, any person who commits any of *376 the following acts "in the presence of a minor under the age of 16" is guilty of a gross misdemeanor:
(1) willfully and lewdly exposes the person's body, or the private parts thereof; (2) procures another to expose private parts; or (3) engages in any open or gross lewdness or lascivious behavior, or any public indecency other than behavior specified in this subdivision.
Minn. Stat. § 617.23, subds. 1, 2(1) (2014).
"When a statute simply prohibits a person from intentionally engaging in the prohibited conduct, the crime is considered a general-intent crime." State v. Fleck , 810 N.W.2d 303, 308 (Minn. 2012). A specific-intent crime "requires an intent to cause a particular result." Id. (quotation omitted). "[R]egardless of whether an offense is described as a specific- or general-intent crime, a defendant must voluntarily do an act or voluntarily fail to perform an act." Id. at 309 (quotation omitted). The indecent exposure statute prohibits "willful" acts of "open or gross lewdness." Minn. Stat. § 617.23, subd. 1. "Willful" generally means a "bad purpose or evil intent in statutes involving moral turpitude." State v. Green , 351 N.W.2d 42, 44 (Minn. App. 1984). "In misdemeanor statutes, it means a voluntary, knowing and intentional act, as distinguished from accidental, involuntary, or unintentional." Id. Willful is the "one term referring to the actor's mental state" in the statute and "is not among the terms used to denote a specific intent." State v. Schramel , 581 N.W.2d 400, 403 (Minn. App. 1998), review denied (Minn. Sept. 22, 1998). We conclude that indecent exposure is a general-intent crime because the statute simply prohibits willful conduct: voluntary, knowing, and intentional indecent or lewd exposures with no intent to cause a particular result.
Appellant contends that the Minnesota Supreme Court's decision in Peery created a specific-intent element to the crime of indecent exposure. In Peery, the supreme court held that, to sustain a conviction for indecent exposure that does not occur in a public place, "the evidence must be sufficient to sustain a finding that the misconduct complained of was committed with the deliberate intent of being indecent or lewd." 224 Minn. at 351, 28 N.W.2d at 854. The Peery court explained that some evidence other than the act itself must be present in order to establish the deliberate intent to be lewd "where the act does not occur in a public place or otherwise where it is certain to be observed," and "is established by evidence of motions, signals, sounds, or other actions ... designed to attract attention ... or by [a] display in a place so public and open that it must be reasonably presumed that it was intended to be witnessed." Id. at 352, 28 N.W.2d at 854 (emphasis added). This "deliberate intent of being indecent or lewd" is not present in "[o]rdinary acts or conduct involving exposure ... as the result of carelessness." Id. at 351, 28 N.W.2d at 854. The deliberate intent to be lewd "is an element of indecent exposure, and one does not have this intent where the exposure is accidental." Schramel , 581 N.W.2d at 403.
More recently, the Minnesota Supreme Court clarified that an actor's "deliberate intent to be lewd" can be proved by establishing that: (1) the act occurred in a public place where it can be presumed that it was intended to be witnessed or (2) if exposure occurred outside of the public sphere, there was some evidence that the defendant attempted to attract attention to his or her lewd act. See State v. Stevenson , 656 N.W.2d 235, 240-41 (Minn. 2003) (the "intent to be indecent [or lewd] can be inferred from the fact that the charged conduct occurs in public or otherwise where it is certain to be observed" (quotation omitted) ).
*377 In effect, the "deliberate intent to be lewd" and the requirement that the exposure be "willful" serve the same function: to distinguish between the accidental and criminal exposures by punishing only voluntary, knowing, and intentional exposures or lewd acts.
District courts are allowed "considerable latitude" in the selection of language for jury instructions. State v. Baird , 654 N.W.2d 105, 113 (Minn. 2002). An instruction is error if it materially misstates the law. State v. Kuhnau , 622 N.W.2d 552, 556 (Minn. 2001). A district court may explain the elements of the crime, "but detailed definitions of the elements to the crime need not be given in the jury instructions if the instructions do not mislead the jury or allow it to speculate over the meaning of the elements." Peterson v. State , 282 N.W.2d 878, 881 (Minn. 1979) ; see also State v. Robinson , 699 N.W.2d 790, 799-800 (Minn. App. 2005) (declining to instruct a jury on the definition of intent was not plainly erroneous).
Here, because the conduct occurred in such a public manner and in a public place, the district court did not misstate the law by failing to include the "deliberate intent to be lewd" as an element of the crime of indecent exposure. The district court properly defined the offense of indecent exposure and its elements. There was no requirement that the district court include the "deliberate intent to be lewd" language from Peery . Because we conclude that there was no error, we need not consider the remaining prongs of the plain error test. See State v. Hayes , 826 N.W.2d 799, 808 (Minn. 2013).
II. Appellant was not entitled to the jury instruction on the statutory defense of voluntary intoxication.
Appellant argues that indecent exposure is a specific-intent crime, and therefore he was entitled to an instruction on the statutory defense of voluntary intoxication. We disagree.
Minnesota law provides:
An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime , the fact of intoxication may be taken into consideration in determining such intent or state of mind.
Minn. Stat. § 609.075 (2014) (emphasis added). "[T]he phrase 'particular intent' as used in Minn. Stat. § 609.075, unambiguously refers to specific-intent crimes, not general-intent crimes." Fleck , 810 N.W.2d at 307. And the defendant must establish the following in order to receive a voluntary-intoxication instruction: "(1) the defendant must be charged with a specific-intent crime; (2) there must be evidence sufficient to support a jury finding, by a preponderance of the evidence, that the defendant was intoxicated; and (3) the defendant must offer intoxication as an explanation for his actions." State v. Torres , 632 N.W.2d 609, 616 (Minn. 2001). Because indecent exposure is a general-intent crime, appellant was not entitled to the instruction and the district court did not err in refusing to instruct the jury on the statutory defense of voluntary intoxication.
III. The district court did not err in refusing to instruct the jury on the common-law defense of involuntary intoxication.
At trial, appellant claimed he became involuntarily intoxicated by an unknown substance placed in the shisha he smoked at the home of an unidentified acquaintance prior to the incident. The district court found that he failed to make a prima facie showing on each of the elements and refused to instruct the jury on *378 the defense of involuntary intoxication. Appellant argues that the district court erred in refusing to instruct the jury. We disagree.
"We review a trial court's refusal to issue a requested instruction for abuse of discretion, focusing on whether the refusal resulted in error." Torres , 632 N.W.2d at 616. A district court abuses its discretion by instructing a jury on the defense of involuntary intoxication where the defendant has failed to establish a prima facie showing entitling him to that instruction. State v. Voorhees , 596 N.W.2d 241, 251 (Minn. 1999). In determining whether the defendant has made the required showing, we view the evidence in the light most favorable to the defendant. State v. Radke , 821 N.W.2d 316, 328 (Minn. 2012).
The defense of involuntary intoxication has been accepted in Minnesota since the supreme court's decision in City of Minneapolis v. Altimus , 306 Minn. 462, 238 N.W.2d 851 (1976). Altimus set out four types of involuntary intoxication: (1) compelled intoxication; (2) pathological intoxication; (3) innocent intoxication; and (4) intoxication as the result of a medically prescribed drug. 306 Minn. at 468, 238 N.W.2d at 856. Appellant pursued a theory of innocent-involuntary intoxication. Innocent-involuntary intoxication occurs "when intoxication results from an innocent mistake by the defendant about the character of the substance taken, as when another person has tricked him into taking the liquor or drugs." Id. The defendant bears the burden of making a "prima facie showing that he is entitled to a jury instruction on the defense of involuntary intoxication, included in which is the defense of mental illness." Voorhees , 596 N.W.2d at 250. To be entitled to the instruction, appellant needed to establish that (1) he "was innocently mistaken as to the nature of the substance taken"; (2) the "intoxication was caused by the intoxicating substance in question and not by some other intoxicant"; and (3) he was temporarily mentally ill at the time of the offense. Id. (quotations omitted). A prima facie showing is one that is "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted." Black's Law Dictionary 1382 (10th ed. 2014).
Appellant presented evidence in the form of his own testimony that he went to the home of two men he had never met before, smoked a substance in a hookah he believed to be shisha, and blacked out. Through the testimony of other witnesses, he established that he appeared to be intoxicated during the incident. The district court found that appellant failed to make a prima facie case for the defense because he presented "no evidence, no witnesses, and only speculation [about what] was in that hookah" and that it was unknown whether there was any substance other than the typical flavoring and tobacco that comprises shisha. Upon review of the record, the district court did not abuse its discretion in determining that appellant failed to make the required showing.
As to the first factor, appellant did not identify what, if any, substance was the source of his intoxication. He presented evidence that he smoked what he believed to be flavored tobacco, he became dizzy and vomited, and woke up in jail. He testified that he never had a reaction like that to tobacco in the past. He did not present any evidence that there was any substance other than tobacco in the hookah and thus did not establish that he was "innocently mistaken as to the nature of the substance taken" because he did not establish that he innocently mistook the shisha that he voluntarily consumed for something other than the flavored tobacco he believed it to be.
*379 Likewise, as to the second factor, that the intoxication was caused by the intoxicating substance in question and not by some other intoxicant, appellant failed to make the requisite showing. In Voorhees , the supreme court confronted similar circumstances to this case. 596 N.W.2d at 248. There, the defendant pursued a theory of involuntary intoxication as the result of a reaction to Prozac. Id. at 249-50. At trial, it was established that he had ingested methamphetamine, alcohol, and Prozac on the night of his offense. Id. at 249. And because it was "impossible to ascertain whether his intoxication was caused by Prozac alone or some combination of the Prozac, alcohol, and methamphetamine he ingested prior to the killing," the supreme court concluded that he "made no prima facie showing that his involuntary intoxication, if any, was caused by Prozac and not some other intoxicant." Id. at 251. Here, it was impossible to ascertain whether appellant's intoxication was caused by the tobacco, some unknown intoxicant, the flavoring in the tobacco, a combination of all three, or something else he ingested that day. In this case, as in Voorhees , appellant failed to make a prima facie showing that his intoxication was due to an unknown and unidentified substance rather than the other substances in the shisha he voluntarily consumed.
Turning to the third factor, appellant was required to make a prima facie showing that "at the time of committing the alleged criminal act," he "was laboring under such a defect of reason, from [mental illness or cognitive impairment], as not to know the nature of [the] act, or that it was wrong." Minn. Stat. § 611.026 (2014) ; Altimus , 306 Minn. at 471, 238 N.W.2d at 857. Appellant presented evidence that he blacked out, and was non-communicative and unsteady on his feet. The state presented evidence that police found appellant "leaning up against a vehicle with his stomach, as if he was hiding something" with his zipper "halfway down." The district court found that, because appellant "hid his privates" when the uniformed police officer approached and "put himself back together and put his genitals back in his pants," he knew his behavior to be criminal and therefore there was no mental defect.
The supreme court has endorsed "a district court's rejection of a mental-illness defense based in part on a defendant's behavior before and after crimes, such as planning and concealment, flight from authorities, disposal of evidence, and expressing awareness of consequences." State v. Roberts , 876 N.W.2d 863, 869 (Minn. 2016) (citing State v. Peterson, 764 N.W.2d 816, 820 (Minn. 2009) ; Davis v. State , 595 N.W.2d 520, 522-24, 527 (Minn. 1999) ; State v. Wilson , 539 N.W.2d 241, 245-46 (Minn. 1995) ; DeMars v. State , 352 N.W.2d 13, 15-16 (Minn. 1984) ). In Roberts , the supreme court affirmed a district court's rejection of a mental-illness defense based in part on evidence that the defendant "refused to identify himself and resisted arrest" and "indicated an awareness of the consequences of his behavior." Id. Here, the evidence indicated that appellant was aware of the potential consequences of his behavior and attempted to conceal evidence of his crime when the police arrived. Even when viewed in the light most favorable to appellant, this evidence demonstrates that he knew his actions were wrong and attempted to conceal his wrongdoing when confronted by police. The district court did not abuse its discretion in concluding appellant failed to make a prima facie case that he was temporarily mentally ill at the time of the act.
Appellant failed to make a prima facie showing on the elements of the involuntary intoxication defense and thus the district *380 court did not err in refusing to instruct the jury on that defense.
DECISION
Because indecent exposure is a general-intent crime, the district court did not err in instructing the jury on the intent element of the crime and appellant was not entitled to an instruction on the statutory defense of voluntary intoxication. The district court did not err in refusing to instruct the jury on the common-law defense of involuntary intoxication because it was impossible to ascertain the source of appellant's purported intoxication and he failed to make a prima facie showing on the elements of the defense.
Affirmed.